**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| VIRGINIA INNOVATION SCIENCES, INC., | ) | The Honorable Liam O'Grady |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | Case No. 1:16-CV-00861(LO-MSN) |
| v. | ) |  |
|  | ) |  |
| AMAZON.COM, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**MEMORANDUM OF DEFENDANT AMAZON.COM, INC.**
**IN SUPPORT OF ITS MOTION FOR REASONABLE**
**ATTORNEY FEES UNDER 35 U.S.C. § 285**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................................1

II.  BACKGROUND ...........................................................................................................1

    A.  The Court Dismissed the '492 Patent Family Claims on the Pleadings. ................................................................................................................2

    B.  The Court Granted Amazon Summary Judgment on VIS's Remaining Claims, Finding Them Either Invalid or Not Infringed. ...................................................................................................................3

III.  VIS'S CONDUCT RENDERS THIS CASE EXCEPTIONAL. ........................................3

    A.  VIS Based Its '844 Patent Infringement Position on a Claim Interpretation that the Patent Did Not Support. .......................................5

    B.  VIS Based Its '398 Patent Infringement Position on a Gross Disregard of the Claim Requirements, the Way the Accused Technology Operates, and the Court's Constructions................................7

    C.  VIS Asserted the '140 Patent Even Though It Knew the Patent Could Not Survive Under Section 101.........................................9

    D.  VIS Asserted the Obviously Invalid '492 Patent Family......................................12

IV.  THE COURT SHOULD AWARD AMAZON THE ATTORNEY FEES IT REASONABLY INCURRED DEFENDING THIS CASE. .............................................13

V.  CONCLUSION...........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AdjustaCam, LLC v. Newegg, Inc.*,
  861 F.3d 1353 (Fed. Cir. 2017)............................................................................4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014).......................................................................11, 12, 13

*Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*,
  110 F. Supp. 3d 655 (E.D. Va. 2015) ...................................................................15

*Blum v. Stenson*,
  465 U.S. 886 (1984)...........................................................................................15

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns., Inc.*,
  234 F. Supp. 3d 760 (E.D. Va. 2017), *vacated on other grounds*, No. 16-1972,
  No. 17-1352, No. 17-1353, 2018 WL 650316 (4th Cir. Feb. 1, 2018) .......................15, 16, 17

*Bywaters v. United States*,
  670 F.3d 1221 (Fed. Cir. 2012)............................................................................15

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
  79 F. Supp. 3d 1111 (C.D. Cal. 2015) ...................................................................4

*Drone Techs., Inc. v. Parrot S.A.*,
  No. 2:14-cv-00111-AJS, 2015 U.S. Dist. LEXIS 98829
  (W.D. Pa. July 21, 2015).......................................................................................16

*Gust Inc. v. Alphacap Ventures, LLC*,
  226 F. Supp. 3d 232 (S.D.N.Y. 2016)...............................................................12, 13

*Homeland Housewares, LLC v. Sorensen Research*,
  581 F. App'x 877 (Fed. Cir. 2014) .......................................................................14

*Intex Recreation Corp. v. Team Worldwide Corp.*,
  77 F. Supp. 3d 212 (D.D.C. 2015)................................................................... *passim*

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
  876 F.3d 1372 (Fed. Cir. 2017)........................................................................12, 13

*Johnson v. Ga. Highway Express Inc.*,
  488 F.2d 714 (5th Cir. 1974) ...............................................................................15

*Kilopass Tech., Inc. v. Sidense Corp.*,
  82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...............................................................14, 15

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

CASES

*Kinglite Holdings, Inc. v. Micro-Star Int'l Co.*,
    No. CV 14-03009 JVS (PJWx), 2016 U.S. Dist. LEXIS 113284
    (C.D. Cal. June 23, 2016) ...................................................................................7, 8

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
    811 F.3d 479 (Fed. Cir. 2016)........................................................................4, 13, 15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014)....................................................................................4, 13

*Perdue v. Kenny A. ex. rel. Winn*,
    559 U.S. 542 (2010)............................................................................................13

*Rambus Inc. v. Infineon Techs. AG*,
    318 F.3d 1081 (Fed. Cir. 2003)............................................................................14

*Raylon, LLC v. Complus Data Innovations, Inc.*,
    700 F.3d 1361 (Fed. Cir. 2012)......................................................................14, 15

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*,
    858 F.3d 1383 (Fed. Cir. 2017) (J. Mayer concurring)............................................4

*Segan LLC v. Zynga Inc.*,
    131 F. Supp. 3d 956 (N.D. Cal. 2015) ...................................................................6

*Shipping & Transit, LLC v. Hall Enters.*,
    No. 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122
    (C.D. Cal. July 5, 2017) ......................................................................................12

*Va. Innovation Scis. v. Amazon.com, Inc.*,
    227 F. Supp. 3d 582 (E.D. Va. 2017) ....................................................................2

*Va. Innovation Scis. v. Amazon.com, Inc.*,
    No. 2:17-cv-422-MSD-RL (E.D. Va. filed Aug. 8, 2017)....................................3, 6

*Vienna Metro LLC v. Pulte Home Corp.*,
    No. 10–cv–502, Dkt. 263 (E.D. Va. Aug. 24, 2011) .................................15, 16, 17

*View Eng'g, Inc. v. Robotic Vision Sys.*,
    208 F.3d 981 (Fed. Cir. 2000)..............................................................................16

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

Cases

Statutes

35 U.S.C. § 101................................................................................................................. *passim*

35 U.S.C. § 112.................................................................................................................6, 11

35 U.S.C. § 285................................................................................................................. *passim*

## I.      INTRODUCTION

VIS never had a viable claim for relief.  Undeterred, VIS elected a scattershot approach against Amazon—asserting eleven patents against three entirely unrelated technologies—to coerce a settlement.  But its patents were either invalid or had nothing to do with the technologies VIS accused.  Indeed, the Court invalidated eight of the eleven asserted patents on the pleadings under § 101, and, following claim construction, VIS was forced to stipulate that Amazon could not infringe one of the remaining three patents.  And although the claim construction order foreclosed VIS's remaining claims, VIS continued prosecuting them, forcing Amazon to spend hundreds of thousands of dollars to defend against them.  The case finally ended when the Court granted Amazon summary judgment on all remaining claims.  The Court found one patent invalid under § 101, and another not infringed as a matter of law.  This case is exceptional, and Amazon respectfully requests that the Court award it the attorneys' fees it reasonably incurred in defending this meritless case.

## II.     BACKGROUND

VIS is a patent speculator with a history of filing patent lawsuits, under different names, against true innovators.[1]  This action is yet another attempt to extort money, this time from one of the world's most innovative companies—Amazon.  (*See* Declaration of Laura Anne Kuykendall

---

[1] *See, e.g.*, *Va. E-Commerce Solutions, LLC. v. eBay, Inc.*, No. 1:10-cv-1229-LMB-IDD (E.D. Va.); *SellerBid, Inc. v. Groupon, Inc.*, No. 1:11-cv-768-LMB-TRJ (E.D. Va.); *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, No. 2:12-cv-548-MSD-TEM (E.D. Va.), *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, No. 2:13-cv-332-MSD-TEM (E.D. Va.), *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, No. 2:14-cv-217-MSD-LRL (E.D. Va.); *Va. Innovation Scis., Inc. v. LG Elecs, Inc.*, No. 1:16-cv-128-LO-IDD (E.D. Va.); *Va. Innovation Scis., Inc. v. HTC Corp.*, No. 1:16-cv-1350-LO-IDD (E.D. Va.); *Va. Innovation Scis., Inc. v. HTC Corp.*, No. 3:17-cv-560-JAG (E.D. Va.).

("Kuykendall Decl."), Ex. 1 (https://www.fastcompany.com/3067455/why-amazon-is-the-worlds-most-innovative-company-of-2017).)

VIS filed its original complaint against Amazon in this case on July 5, 2016.  (Dkt. No. 1.) In it, VIS asserted ten patents.  Eight of those patents were from the same patent family—the '492 patent family.[2]  VIS alleged that Amazon's Fire Phone, Kindle Fire, Fire TV, and Fire Stick products infringed the asserted claims of the '492 patent family.  VIS also alleged that the Fire TV and Fire Stick infringed U.S. Patent No. 8,135,398 (the "'398 patent") and that the Amazon Dash Button infringed U.S. Patent No. 9,369,844 (the "'844 patent").  And VIS alleged that the Amazon Pay service infringed U.S. Patent Application No. 13/230,657, which was then pending at the Patent Office.  That application issued as U.S. Reissue Patent No. RE46,140 (the "'140 patent") on September 6, 2016.  VIS amended its complaint to allege infringement of the '140 patent on January 11, 2017.  (Dkt. No. 59.)

**A.    The Court Dismissed the '492 Patent Family Claims on the Pleadings.**

On September 14, 2016, Amazon filed a motion to dismiss VIS's claims of infringement of the '492 patent family for failure to allege a patentable claim.  (Dkt. No. 22.)  On January 5, 2017, the Court granted Amazon's motion, concluding that the patents were ineligible under 35 U.S.C. § 101.  (Dkt. No. 57 at 32; *see also Va. Innovation Scis. v. Amazon.com, Inc.*, 227 F. Supp. 3d 582 (E.D. Va. 2017).)  In doing so, the Court noted that the claims lacked "an innovative concept," were "purely functional" in nature, and improperly threatened a "sweeping universe of preemption."  (Dkt. No. 57 at 16, 32.)

---

[2] These patents are U.S. Patent Nos. 7,899,492, 8,050,711, 8,903,451, 8,948,814, 9,118,794, 8,712,471, 9,286,853, and 9,355,611 (collectively, the "'492 patent family").

**B.    The Court Granted Amazon Summary Judgment on VIS's Remaining Claims, Finding Them Either Invalid or Not Infringed.**

After the Court issued its claim construction order, VIS stipulated to non-infringement of the '844 patent by Amazon's Dash Button.  (Kuykendall Decl., Ex. 2, Letter from W. Bradley to D. Hadden dated August 24, 2017; Dkt. No. 203 at 8.)[3]  But VIS, continued to prosecute its remaining infringement claims on the '140 and '398 patents, even though they too were foreclosed by the Court's claim construction order.

Accordingly, Amazon was forced to proceed through summary judgment to dispose of the remaining claims.  On December 22, 2017, the Court granted Amazon's motion, finding that the '398 patent was not infringed and the '140 patent, which barely survived dismissal on the pleadings, was invalid.  (Dkt. No. 203.)  The Court noted that VIS's litigating position in this case ignored the claim requirements of the '398 patent and that VIS could not identify an inventive concept in the claims or the specification of the '140 patent.  (*Id.* at 4-5, 12.)  Nothing in VIS's case survived.

## III.   VIS'S CONDUCT RENDERS THIS CASE EXCEPTIONAL.

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The party seeking fees must prove that the case is "exceptional" by a preponderance of the evidence.  This determination is committed to the

---

[3] Rather than walking away from its infringement claim of this patent, however, on September 12, 2017, VIS served a new complaint, filed against Amazon on August 8, asserting that a different Amazon product, the Dash Replenishment Service, infringed the '844 patent.  *See Va. Innovation Scis. v. Amazon.com, Inc.*, No. 2:17-cv-422-MSD-RL (E.D. Va.) ("*VIS II*"); (Kuykendall Decl., Ex. 3 (*VIS II*, Dkt. No. 1); *id.* Ex. 4 (*VIS II*, Dkt. No. 9).)  In this new action, VIS also asserted the '398 patent against previously non-accused Amazon Fire Tablets and accused several Amazon products of infringing two newly issued VIS patents.  (*Id.* Ex. 3 (*VIS II*, Dkt. No. 1).)  VIS voluntarily dismissed that second case before Amazon could even answer the complaint—implicitly acknowledging that it had no basis to continue it.

discretion of the district court and is based on the totality of the circumstances. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* "Section 285 discourages certain 'exceptional' conduct by imposing the cost of bad decisions on the decision maker." *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1114 (C.D. Cal. 2015).

Here, there can be no dispute that Amazon is the prevailing party: the Court dismissed all of VIS's claims and has since entered judgment in favor of Amazon and against VIS. (Dkt. Nos. 57, 203, 206.) And courts have found cases exceptional where, like here, "[the] suit never should have been filed." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383, 1391 (Fed. Cir. 2017) (J. Mayer concurring); *see also Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (affirming district court's finding that the case was exceptional because "[t]he allegations of infringement were ill-supported . . . and thus the lawsuit appears to have been baseless"). Courts have also found cases exceptional where, like here, the patentee continued to litigate after claim construction ended any reasonable likelihood of prevailing on the merits. *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360 (Fed. Cir. 2017) (finding case exceptional because while plaintiff "may have filed a weak infringement lawsuit, . . . [its] suit became baseless after the district court's *Markman* order"); *see also Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (awarding fees because the court's claim construction "foreclosed any reasonable argument" that the accused product infringed).

VIS's conduct in filing and maintaining this case was unreasonable and rendered this case exceptional.  VIS ignored the operation of the technology it accused, proposed claim constructions divorced from the claimed inventions to fit its infringement theories, and then, when those claim constructions were rejected, failed to apply the claim constructions ordered by the Court.  And VIS maintained that its patents were valid under § 101 when it knew that the patents did not claim specific technical solutions required for a patent eligibility.  The Court should award Amazon the fees it reasonably incurred in defending this meritless lawsuit.

### A.    VIS Based Its '844 Patent Infringement Position on a Claim Interpretation that the Patent Did Not Support.

VIS's infringement theory for the '844 patent lacked merit from the start.  The patent discloses a diaper monitoring system in which a diaper has "a sensor [that] reads the wetness and other qualities of the diaper and sends a corresponding update to alert the appropriate caregiver that the diaper needs changing," allowing the system to automatically order more diapers.  (Dkt. No. 139 at 25.)  VIS accused Amazon's Dash Button—not a diaper monitoring system or a product that monitors anything at all, but a small physical device linked to a particular product that a customer can order by pressing a button on the device.  (*See id.*; Dkt. No. 121-5.)

The patent requires that the monitoring system "transmit[], through a wireless transmission channel, an *item status signal* to provide information regarding an *updated condition of a merchandise*."  (Dkt. No. 139 at 26 (emphasis in original).)  To read this claim requirement on the Dash Button, VIS took the implausible position that "item status signal" and "an updated condition of a merchandise" in the patent's claims could mean "anything related to the merchandise"—*i.e.*, despite the clear language of the claims, these claim terms need not convey information about an item's status or condition.  (*Id.* at 30, 33.)  VIS then asserted that the Dash Button transmits infor-

mation regarding both the status of the merchandise and the updated condition of the merchandise—even though the Dash Button only transmits information about the button itself (*i.e.*, the button's unique identifier) and nothing about the product associated with the button, much less the item's status or updated condition of the product. (*See id.* at 30; Dkt. No. 121-5.)

In the claim construction order, the Court rejected VIS's "anything related" to the merchandise theory, finding VIS's litigation position "aggressive" and its constructions (under the guise of plain and ordinary meaning) "inappropriately broad," "contrary to the overwhelming thrust of the patent," and failing to give effect to the term "updated." (Dkt. No. 139 at 30, 31, 33.) The Court also noted that the asserted '844 patent claims lacked written description under 35 U.S.C. § 112 because the claimed "automatic purchasing is not described at any point in the specification" and the specification and claims "give no hint" of "a single device that both sends the item status signal and initiates a purchase of the merchandise." (*Id.* at 27-28, 37.)

After the Court issued its order, VIS was forced to stipulate to non-infringement of the '844 patent. But it should have never asserted the patent in the first place, as it never had a plausible basis to do so. VIS's misconduct is even broader than that, though. Three weeks after the Court noted in its claim construction order that the '844 patent was implicitly invalid under 35 U.S.C. § 112 because it included "no description of [the claimed] combined device in the specifications, [and] it [was] nearly impossible to tell how it would work," VIS served a new complaint against Amazon asserting the very same patent yet again. (Dkt. No. 139 at 28; Kuykendall Decl., Ex. 3 (Dkt. No. 1, *VIS II*).) VIS's meritless assertion of the '844 patent makes this case exceptional. *See, e.g.*, *Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 962-963 (N.D. Cal. 2015) (finding it "obvious that the [asserted] patent's system for browsing the Internet . . . did not cover the act of playing [defendant's] games," and that plaintiff's "claim construction positions and infringement

theory were so unreasonable as to make this case 'exceptional'"); *Kinglite Holdings, Inc. v. Micro-Star Int'l Co.*, No. CV 14-03009 JVS (PJWx), 2016 U.S. Dist. LEXIS 113284, at \*29-30 (C.D. Cal. June 23, 2016) (finding case exceptional because a pre-filing investigation would have shown that defendant's product did not have all the necessary components claimed by the patent).

> **B.     VIS Based Its '398 Patent Infringement Position on a Gross Disregard of the Claim Requirements, the Way the Accused Technology Operates, and the Court's Constructions.**

VIS's infringement theory for the '398 patent could not work under any plausible interpretation of that patent's claims.  As the Court recognized, claim 1 requires "six component parts: (1) multimedia content (*e.g.*, a YouTube video) is received by a 'wireless terminal device [*sic*] (*e.g.*, a cell phone) through a wireless communication network (*e.g.*, Verizon); (2) the multimedia content is converted to a format that is compatible with the 'destination device' (*e.g.*, a television); (3) the multimedia content is sent to a television; (4) it is sent by establishing a 'predetermined channel' of communication with the television; (5) after establishing the channel, the multimedia content is transported through that channel; so that (6) it may be displayed on the television in conjunction 'with a navigational command to the destination device for the predetermined channel.'" (Dkt. No. 139 at 8; Dkt. No. 203 at 3.)  The other asserted claims are of similar scope.  Indeed, all asserted claims require "receiving a multimedia content item originated from a source located outside a designated location and *destined for a destination device located within the [home/designated] location*." (*See, e.g.*, Dkt. No. 139 at 8, 11.)  VIS's theory that the destination of the device could be determined *after* the multimedia content is received by the wireless terminal device ignored this claim language.  As the Court recognized, "the claims make clear that the destination device must be established as the destination before the media content is received [and] [i]f the free will of the cell phone's user can dictate the destiny of the multimedia content item, then it is

no longer within the scope of the claims." (*Id.* at 14.)  Despite this clear requirement of both the claims and the Court's claim construction order, VIS contended that the destination device can be determined by the will of the cell phone's user:  "Much like an orchestra is directed by a conductor, here the multimedia content is 'directed' to the TV by the user device."  (Dkt. No. 158 at 10; Dkt. No. 203 at 5.)  In the summary judgment order, the Court properly rejected this argument as inconsistent with the claims, as "VIS's own description suggests that it is the user, not an external source, which directs the destiny of the multimedia content item."  (Dkt. No. 203 at 5.)

In its claim construction order, the Court also held that in the asserted claims "the multimedia content item" received from the wireless terminal device must be "in the format received by the wireless terminal device from the source."  (Dkt. No. 139 at 22.)  VIS again ignored the Court's construction.  It continued to maintain that the accused products infringe because they employ the Miracast industry standard even though it was, and still is, undisputed that when the user transmits the multimedia content from a phone to the Fire TV or TV Stick using the cell phone's Miracast Wi-Fi feature, what is transmitted is not what is received by the cell phone nor in the same format.  Instead, "Miracast transmits a *new video*[,] . . . stream [that] is generated locally at the cell phone; the phone screen itself is forwarded."  (Dkt. No. 203 at 6 (emphasis in original).)

VIS should have known before filing suit that its Miracast infringement theory for the '398 patent was fatally defective; indeed, detailed documentation about the standard Miracast technology VIS accused was readily available to VIS before it filed this case.  VIS's decision to assert its claims on the '398 patent renders this case exceptional.  *See, e.g.*, *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 335-36 (S.D.N.Y. 2014) (finding the case exceptional because a basic pre-suit investigation would have revealed that no litigant could have expected

8

success on the merits), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016).  And even if VIS somehow believed it could prevail when it filed its complaint, it should have known that its infringement theory was baseless after the Court issued its claim construction order.  VIS's decision to continue to prosecute its claims in the face of a claim construction order that foreclosed its infringement claim likewise renders this case exceptional.  *AdjustaCam, LLC*, 861 F.3d at 1360.

What's more, even if VIS did not realize what the Court's claim construction order required, it should have figured that out on August 22, 2017, when Amazon's counsel sent a letter to VIS's counsel explaining that VIS lacked a Rule 11 basis for its '398 patent infringement claims. (Kuykendall Decl., Ex. 5.)  VIS still refused to dismiss its claim.  It refused even though it knew that it failed to develop any evidence identifying "any third party who actually used their cell phone to stream content received from their cellular network to their accused Fire TV or Stick device to view the content on a television"—thus failing to develop any evidence supporting any claim of direct infringement and, consequently, any claim of indirect infringement.  (Dkt. No. 203 at 7.) VIS's unreasonable decision to pursue its claims for infringement of the '398 patent even after receiving notice that its claims could not succeed also renders this case exceptional.  *See Intex Recreation*, 77 F. Supp. 3d at 217 (finding case exceptional where plaintiff refused defendant's proposal to stipulate to non-infringement under the court's claim construction and argued positions at summary judgment that contradicted the court's constructions).

### C.     VIS Asserted the '140 Patent Even Though It Knew the Patent Could Not Survive Under Section 101.

VIS's infringement claim for the '140 patent also lacked merit.  The patent is ineligible on its face, and VIS knew that before asserting it.  Amazon moved to dismiss VIS's claim for infringement of the '140 patent for failure to claim patent-eligible subject matter under § 101 because

9

the patent claimed nothing more than the abstract idea of securely processing credit card transactions with a payment server.  (Dkt. Nos. 62-63.)  VIS opposed the motion, arguing repeatedly that the patent claimed a novel means of "switching" a buyer from one server to a more secure payment server, and that this rendered the patent non-abstract and inventive.  (*See* Dkt. No. 76 at 3, 8-9, 18, 20, 22-23.)  VIS contended that the specification "detail[ed] the novel switching procedure."  (*Id.* at 20.)  But, VIS plainly mischaracterized the patent, as it disclosed no such solution.  (Dkt. No. 78 at 4.)  Indeed, Ms. Tiehong Wang, an officer of VIS and a named inventor on the '140 patent, could provide no explanation of the claimed switching:

> Q  So how in your patent is the buyer switched from the web DB server to the payment server?
> A  (Peruses document.)  Information related with this step is every-where in the spec.  That must be understood and read based on the entirety of the spec, and must be understood and practiced by the ordinary skilled in the art at the time of invention.
> Q  Can you answer the question?
> A  I just did.
> Q  No.  Answer the question.  How in your patent is the buyer switch[ed] . . . [from] the web DB server to the payment server, how is that achieved?
> A  That is achieved by the information provided by the entirety of the spec.
> . . .
> Q  Well, describe it to me.  How is that done?  Technically how is that achieved?  The switching, tell me how it works.
> A  Technically?
> Q  Yes, technically, how did you invent a system to switch the buyer from the web DB server to the payment server?  What was your technical solution?
> A  I don't have a technical degree, and the required qualification to answer technical questions related with the switching.

Kuykendall Decl., Ex. 6 (Tr. 209:3-18, 210:3-13.)  Even VIS's technical expert admitted at his deposition that the specification "is silent" on how "the buyer is shifted." (Dkt. 169-10, Ex. 9 at 103:18-105:24.)

10

In light of VIS's misrepresentation of the '140 patent specification, however, the Court, despite its "significant questions as to [the] patent eligibility" of the '140 patent and the patent's "broad functional language," deferred resolution of § 101 invalidity until after claim construction, when it could more fully consider the issue in view of the disclosures of the patent. (Dkt. No. 79.) When it did so, the Court's claim construction order confirmed what VIS's witnesses already knew and what should have been apparent to VIS from the beginning: VIS had no plausible basis to maintain that the '140 patent was patentable. (*See* Dkt. No. 139 at 46.) Specifically, the Court found a "lack of detail concerning the term 'switched'" in the '140 patent and that the "meaning of 'switching'" was "unclear." (*Id.*) The claim construction order not only established that the patent was invalid under Section 101, but also under Section 112 for lack of written description.

Yet VIS continued to prosecute its claim until this case concluded with the Court's summary judgment order confirming that the '140 patent failed to disclose an inventive technical solution: "Although VIS claims the result of securely processing a credit card transaction with a payment server, the '140 patent does not disclose or claim any new or improved technology for achieving the result." (Dkt. No. 203 at 10-11.) And even though VIS claimed that the act of "switching" was the '140 patent's inventive step under step two of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), VIS failed to identify in the patent "any new or improved technology for achieving it . . . [or] *how* the switching is accomplished." (Dkt. No. 203 at 12 (emphasis in original).)

The '140 patent, on its face, claims ineligible subject matter. VIS knew when it first asserted it, and certainly after the Court's claim construction order confirming that it was invalid under § 101. VIS's conduct of continuing to prosecute its claims—and forcing Amazon to defend

11

those claims—through summary judgment—gives rise to attorney fees under Section 285.[4]  *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379-80 (Fed. Cir. 2017) (affirming district court's exceptional case finding where, post-*Alice*, plaintiff should have recognized that the patent claimed unpatentable subject matter); *Shipping & Transit, LLC v. Hall Enters.*, No. 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122, at \*19 (C.D. Cal. July 5, 2017) ("The weakness of Plaintiff's § 101 position is a significant factor that weighs in favor of a finding that this case is 'exceptional' under 35 U.S.C. § 285."); *Gust Inc. v. Alphacap Ventures, LLC*, 226 F. Supp. 3d 232, 241 (S.D.N.Y. 2016) (awarding fees where claims were frivolous and objectively unreasonable in light of *Alice*).

### D.    VIS Asserted the Obviously Invalid '492 Patent Family.

VIS's assertion of the '492 patent family in this case was similarly unreasonable in light of the Supreme Court's patentability requirements in *Alice*.  As the Court noted in its order granting Amazon's motion to dismiss, VIS failed to meaningfully dispute that under step one of *Alice*, the '492 patent family is directed to an "abstract idea"—"the generalized problem of reproducing a

---

[4] VIS's infringement theory for the '140 patent was also extremely weak.  The patent purports to cover a method of enabling purchasers to make secure online credit card payments by "switching" the buyer from a less secure connection with a merchant server after the buyer makes "an indication to buy the one or more of the items" to a more secure encrypted connection with a payment server.  (Dkt. No. 139 at 44-45; *see also* Dkt. No. 166 at 15.)  VIS asserted that Amazon Pay—an online service that allows pre-existing Amazon users to make purchases on non-Amazon merchant websites—infringes the '140 patent.  But during the litigation, VIS failed to identify a single instance where a user, after making an indication to buy, was switched from a less secure connection with a merchant website to a more secure encrypted connection to an Amazon server. (*See* Dkt. No. 166 at 15-21.)  In the only example of infringing use VIS presented, the buyer was switched from a secure HTTPS connection with the merchant site to another *equally* secure HTTPS connection with the Amazon payment server.  (*See id.* at 15-17.)  VIS's argument that the limitation could be met if there was any less secure connection with the merchant server at any point of time before the user entered credit card information (i.e., several web pages before the switch) borders on frivolous and is contrary to the patent's claim language and purpose.  VIS had no reasonable basis to assert infringement of the '140 patent in this case.

video from a mobile phone on a separate display device." (Dkt. No. 57 at 18-20.)  The Court also found that under step two of *Alice*, the patents failed to claim any "inventive concept" that would transform this abstract idea into a patentable invention.  (*Id.* at 20.)  It noted that there are no limitations on the mobile device and separate display device recited in the claims, and the intermediary device (the "MTSCM") placed between the two "only contains functional language rather than specific instructions," and thus "describes an ends rather than a means." (*Id.* at 23-24; *see also id.* at 32 ("[T]he MTSCM's placement between ubiquitous conventional devices preempts future innovation in the field of mobile-to-HDTV conversion . . . preemption remain[ing] the guiding principle of the § 101 inquiry . . . .").)  Indeed, VIS could not point to any description in either the shared specification or the patents' claims of any new device, architecture, or process.  (*See* Dkt. No. 37 at 4-10; Dkt. No. 57 at 31-32.)  VIS should not have asserted infringement of the '492 patent family in this case given the "the weakness of its case under *Alice*." *Inventor Holdings*, 876 F.3d at 1379-80.

Considering the totality of the circumstances, this is an exceptional case under Section 285. The "substantive strength of [VIS's] litigating position" was exceptionally weak on all claims, and it was improper for VIS to even file this action. *Octane Fitness*, 134 S. Ct. at 1756.  Moreover, VIS litigated this case in an "unreasonable manner" by needlessly prolonging the case after the Court's claim construction order made clear that VIS had no reasonable chance of prevailing on its remaining claims. *Id.* Both grounds make this case exceptional.

## IV.  THE COURT SHOULD AWARD AMAZON THE ATTORNEY FEES IT REASONABLY INCURRED DEFENDING THIS CASE.

The amount and calculation of reasonable attorney fees under Section 285 is committed to the discretion of the district court. *Lumen*, 811 F.3d at 483; *see also Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 558 (2010).  Congress had two objectives in enacting Section 285:  (1) to

provide a deterrent to frivolous or unnecessary patent litigation, and (2) to serve a compensatory purpose for parties injured by such litigation. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1372-73 (Fed. Cir. 2012). And "[t]here is nothing in the legislative history or applicable case law to suggest that . . . courts should balk at awarding full fees." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015).

Where a court finds a case exceptional on the basis of litigation misconduct, the amount of the award must relate to the misconduct. *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003). But, a court may award the full cost of defense where it finds the case exceptional based on the totality of the circumstances, including because the plaintiff brought a meritless case. *See Homeland Housewares, LLC v. Sorensen Research*, 581 F. App'x 877, 881 (Fed. Cir. 2014) (affirming amount of awarded attorney's fees "because it is the 'totality of the circumstances,' and not just discrete acts of litigation conduct, that justify the court's award of fees") (quoting *Octane*, 134 S. Ct. at 1756); *Kilopass*, 82 F. Supp. 3d at 1166 (detailing case law establishing that the award of full fees is consistent with the purpose of Section 285).

This Court should award Amazon its full costs of defense. None of VIS's infringement claims was ever viable. And if VIS had given the Court's claim construction due respect, agreed to Amazon's proposal to stipulate to non-infringement for the '398 patent, and withdrawn its infringement claim for the '140 patent, this lawsuit would have been over in August of last year and Amazon would have been spared the cost of its litigation after the claim construction order. Amazon's post-claim construction costs included, among other things, supplementation of expert reports, taking and defending several depositions, summary judgment briefing, preparation of pretrial disclosures, other trial preparation, and travel and attendance at the final pretrial conference and summary judgment hearing. Awarding the full amount of Amazon's attorney fees incurred

during the case satisfies Section 285's dual purpose of providing a deterrent to VIS's "frivolous [and] unnecessary patent litigation" and compensating Amazon for its injury from defending against VIS's baseless claims. *Kilopass*, 82 F. Supp. 3d at 1165; *Raylon*, 700 F.3d at 1372-73.

"In calculating an attorney fee award, a district court usually applies the lodestar method, which provides a presumptively reasonable fee amount by multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case." *Lumen*, 811 F.3d at 483 (internal citations omitted). "This method has been characterized as 'readily administrable' and 'objective,' but 'not perfect' and 'never intended to be conclusive in all circumstances.'" *Id.* (quoting *Perdue*, 559 U.S. at 551-52, 554).[5]

Reasonable hourly rates for determining the lodestar figure are the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In general, this is measured by the prevailing rate in the forum. *Bywaters v. United States*, 670 F.3d 1221, 1233 (Fed. Cir. 2012). The Alexandria Division has used the prevailing market rates of attorneys' rates in Northern Virginia. *Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 673 (E.D. Va. 2015). To determine whether rates for complex commercial cases, such as this one, in this division are reasonable, the Court has found the matrix of hourly rates set forth in *Vienna Metro LLC v. Pulte Home Corp.*, No. 10–cv–502, Dkt. 263 (E.D. Va. Aug. 24, 2011) ("*Vienna Metro*") "to be persuasive evidence of an appropriate range for the rates of attorneys engaged in complex litigation in Northern Virginia." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns., Inc.*, 234 F. Supp. 3d 760, 770-71 (E.D. Va. 2017) (listing opinions relying on the *Vienna Metro* matrix

---

[5] In determining the reasonable number of hours and a reasonable rate, the Court has considered the twelve-factors set out in *Johnson v. Ga. Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974). The fees sought by Amazon are reasonable in light of these factors. (Declaration of Saina S. Shamilov ("Shamilov Decl.") ¶ 14.)

to determine reasonable rates and using it to determine reasonableness of rates in that copyright case), *vacated on other grounds*, No. 16-1972, No. 17-1352, No. 17-1353, 2018 WL 650316 (4th Cir. Feb. 1, 2018).  The *Vienna Metro* matrix, however, provides a range of rates from 2011, and thus does not take into account likely increases in firm billing rates that occurred between then and 2016, when this case began.[6]

After calculating the lodestar figure, "the court must subtract fees for hours spent on un-successful claims unrelated to successful ones [and] award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff."  *BMG*, 234 F. Supp. 3d at 766 (citations omitted).  Here, no such calculation is necessary, as Amazon prevailed on all the asserted claims.

Amazon's attorney fees from July 5, 2016 to December 31, 2017 defending against this action total approximately ██████████.  Of that amount, ██████████ in attorney fees were in-curred from August 18, 2017, the date of the claim construction order, to December 22, 2017 when the Court entered its summary judgment order.  These fees correspond to a reasonable number of attorney working hours given the complexity of the case, which involved eleven patents asserted against multiple products and resulted in two motions to dismiss, patent-specific contentions and claim construction briefing, extensive fact and expert discovery, summary judgment briefing, and

---

[6] Alternatively, the Federal Circuit has approved use of the American Intellectual Property Association's ("AIPLA") annual Economic Survey to calculate reasonable rates for relevant mar-kets in patent cases.  *See View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 987-88 (Fed. Cir. 2000) (approving use of AIPLA survey to reduce hourly rates in determining sanctions); *Drone Techs., Inc. v. Parrot S.A.*, No. 2:14-cv-00111-AJS, 2015 U.S. Dist. LEXIS 98829, *12-14 (W.D. Pa. July 21, 2015) (applying AIPLA rates for relevant region after citing several cases that did the same).  The modified calculations using prevailing local rates and AIPLA rates are set forth in the attached attorney declaration.  (Shamilov Decl. at ¶¶ 3, 18-19, Ex. B; Declaration of Mary Zinsner ("Zinsner Decl.") at ¶¶ 13-14, Ex. B.)

pretrial preparations.[7]  (Shamilov Decl. ¶¶ 14, 17, Ex. B; Zinsner Decl. ¶¶ 7, 10, Ex. B.)  Amazon respectfully requests that the Court apply the lodestar method and award Amazon a full award of its incurred fees, or at a minimum the fees it incurred after the Court issued the claim construction order.

## V.    CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court grant Amazon's motion and award it the full amount of the attorneys' fees it incurred in defending this suit.

---

[7] A breakdown and description of these fees is set forth in the attached attorney declarations. (*See* Shamilov Decl. ¶¶ 14-19, Ex. B; Zinsner Decl. ¶¶ 10-14, Ex. B.)  Also included in the attorney declarations are the hourly rate ranges set forth in the 2011 *Vienna Metro* matrix and the 2017 AIPLA economic survey rates for the Washington D.C. Consolidated Metropolitan Statistical Area.  (Shamilov Decl. at ¶¶ 3, 8-10, Exs. B-C.)  The rates of Amazon's main counsel in this case, Fenwick & West, and local counsel, Troutman Sanders, generally fall within these ranges (*see id.*; Zinsner Decl. ¶¶ 4, 7-9, Ex. B) and are comparable to rates approved by the Court in *BMG*.  *BMG*, 234 F. Supp. 3d at 778.

Dated:  February 14, 2018

Respectfully submitted,

**AMAZON.COM, INC.**

*Of counsel:*

J. David Hadden**
dhadden@fenwick.com
Saina Shamilov**
sshamilov@fenwick.com
Todd Gregorian*
tgregorian@fenwick.com
Jeffrey Ware*
jware@fenwick.com
Ravi Ranganath**
rranganath@fenwick.com
Dargaye Churnet*
dargayec@fenwick.com
Jessica Kaempf*
jkaempf@fenwick.com
Sapna Mehta*
sapnam@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  (650) 988-8500
Facsimile:  (650) 938-5200

***Admitted Pro Hac Vice**

*/s/ Laura Anne Kuykendall*
Robert A. Angle (VSB No. 37691)
   robert.angle@troutmansanders.com
Laura Anne Kuykendall (VSB No. 82318)
   la.kuykendall@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone:  (804) 697-1468
Facsimile:  (804) 697-1339

Mary Catherine Zinsner (VSB No. 31397)
   mary.zinsner@troutmansanders.com
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone: (703) 734-4363
Facsimile: (703) 734-4340

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2018, I electronically filed the foregoing

pleading with the Clerk of the Court using the CM/ECF System, which will then send a notification

of such filing (NEF) to the following:

Shauna M. Wertheim (VSB No. 33690)
The Marbury Law Group, PLLC
11800 Sunrise Valley Drive, 15th Floor
Reston, VA 20191
Telephone:  571.267.7002
Fax: 703.391.2901
swertheim@marburylaw.com

William Eugene Bradley
webradley@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
601 Pennsylvania Ave. NW
Suite 700 South
Washington D.C. 20004
Telephone: (202)747-9572
Facsimile: (202)347-1819

*Counsel for Plaintiff*
VIRGINIA INNOVATION SCIENCES, INC.

*/s/ Laura Anne Kuykendall*
Laura Anne Kuykendall (VSB No. 82318)
la.kuykendall@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone:  (804) 697-1468
Facsimile:  (804) 697-1339

*Counsel for Defendant*
AMAZON.COM, INC.

19