**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| VIRGINIA INNOVATION SCIENCES, INC., (now INNOVATION SCIENCES, LLC) | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-00861 (LO-MSN) |
| AMAZON.COM, INC., | ) ) | |
| Defendant. | ) ) | |

_____

### PLAINTIFF'S OPPOSITION TO AMAZON.COM, INC.'S MOTION FOR ATTORNEYS' FEES

Donald L. Jackson (VSB No. 42882)
djackson@davidsonberquist.com
James D. Berquist (VSB No. 42150)
jberquist@davidsonberquist.com
Walter D. Davis, Jr.  (VSB No. 48217)
wdavis@davidsonberquist.com
DAVIDSON BERQUIST JACKSON &
GOWDEY, LLP
8300 Greensboro Drive, Suite 500
McLean, VA 22102
Telephone: (571) 765-7700
Facsimile: (571) 765-7200

*Counsel for Plaintiff Innovation Sciences, LLC*

## **TABLE OF CONTENTS**

I.     INTRODUCTION ...............................................................................................1

    A.     Procedural History ...............................................................................2

    B.     Related Legal Proceedings....................................................................5

II.    ARGUMENT .....................................................................................................8

    A.     Legal Standard ......................................................................................8

    B.     Innovation's Substantive Positions Were Reasonable ........................10

       1.     The Section 101 Issues.................................................................10

       2.     The Infringement Issues...............................................................17

          a.     The '140 Reissue Patent......................................................17

          b.     The '398 Patent ...................................................................19

          c.     The '844 Patent ...................................................................23

    C.     Innovation's Other Litigation .............................................................24

    D.     Innovation's Litigation Goals And Conduct Were Both Reasonable ...................28

III.   CONCLUSION.................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*AdjustaCam, LLC v. Newegg, Inc.,*
  861 F.3d 1353 (Fed. Cir. 2017).......................................................................................... 27

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.,*
  573 U.S. 208 (2014) ........................................................................................................... 10

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
  421 U.S. 240 (1975)............................................................................................................. 8

*Athena Diagnostics, Inc. v. Mayo Collaborative Service, LLC,*
  927 F.3d 1333 (Fed. Cir. 2019)......................................................................................... 11

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility, LLC,*
  827 F.3d 1341 (Fed. Cir. 2016)................................................................................... 12, 17

*Bilski v. Kappos,*
  561 U.S. 593 (2010).......................................................................................................... 10

*Calypso Wireless, Inc. v. T-Mobile USA, Inc.,*
  2015 WL 1022745 (E.D. Tex. Mar. 5, 2015) .................................................................. 24

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
  927 F.3d 1306 (Fed. Cr. 2019).......................................................................................... 10

*CertusView Techs., LLC v. S & N Locating Services, LLC,*
  287 F.Supp.3d 580 (E.D. Va. 2018) ................................................................................. 10

*Core Wireless Licensing v. LG Elecs., Inc.,*
  880 F.3d 1356 (Fed. Cir. Jan. 25, 2018) .......................................................................... 12

*Credit Card Fraud Control Corp. v. Maxmind, Inc.,*
  2016 WL 3355163 (N.D. Tex. Apr. 7, 2016) ................................................................... 15

*Data Scape Limited v. Spotify USA Inc.,*
  CV 19-4367 PSG (C.D. Cal. December 3, 2019) ............................................................. 15

*DDR Holdings, LLC v. Hotels.com,*
  773 F.3d 1245 (Fed. Cir. 2014).............................................................................. 12, 13, 17

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.,*
  2015 WL 1284826 (E.D. Tex. Mar. 20, 2015) ................................................................. 14

*Dietoal Innv., LLC v. Wegmans Food Markets, Inc.,*
  126 F. Supp.3d 680 (E.D. Va. 2015) .................................................................................. 9

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016).......................................................................................... 12

*EON Corp. IP Holdings, LLC v. Cisco Sys., Inc.,*
  2014 WL 3726170 (N.D. Cal. Jul. 25, 2014).................................................................... 9

*Gametek LLC v. Zynga. Inc.*,
2014 WL 4351414 (N.D. Cal. Sept. 2, 2014) ........................................................... 9, 10

*Garfum.com Corporation v. Reflections by Ruth*,
2016 WL 7325467 (D. NJ. Dec. 16, 2016).................................................................. 14

*Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*,
2012 WL 5473752 (E.D. Va. Nov. 9, 2012)................................................................. 17

*In re Protegrity Corp.*,
2017 U.S. Dist. LEXIS 27300 (N.D. Cal. Feb. 27, 2017) ............................................. 15

*Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*,
2017 U.S. Dist. LEXIS 160700 (W.D. Mo. Sept. 29, 2017) .......................................... 15

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
2017 WL 6062460 (Fed. Cir. 2017)............................................................................ 11

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
430 F3.d 1377 (Fed. Cir. 2005).................................................................................. 17

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
24 F. Supp. 3d 329 (S.D.N.Y. 2014).................................................................... 22, 27

*My Health, Inc. v. ALR Techs., Inc.*,
2017 WL 6512221 (E.D. Tex. December 12, 2017)....................................................... 11

*NetTalk.com, Inc. v. Magicjack Vocaltec Ltd.*,
2015 WL 10015379 (S.D. Fla. Nov. 20, 2015)......................................................... 1, 24

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) ............................................................................................... 1

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014)............................................................................................... 9, 28

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
635 F.3d 539 (Fed. Cir. 2011)................................................................................... 22

*Raylon, LLC v. Complus Data Innovations, Inc.*,
700 F.3d 1361 (Fed. Cir. 2012)............................................................................ 19, 20

*RLIS. Inc. v. Cerner Corp.*,
2015 WL 5178072 (S.D. Tex. Sep. 3, 2015) ............................................................... 10

*Robbins Co. v. Herrenknecht Tunnelling Sys. USA, Inc.*,
2015 WL 3454946 (N.D. Ohio May 29, 2015)............................................................. 20

*Rothschild Connected Devices Innovations, LLC v. Guardian Protective Services, Inc.*,
858 F.3d 383 (Fed. Cir. 2017).................................................................................... 26

*Sciele Pharma Inc. v. Lupin Ltd.*,
684 F.3d 1253 (Fed. Cir. 2012).................................................................................. 14

*SFA Sys., LLC v. Newegg Inc.*,
793 F.3d 1344 (Fed. Cir. 2015)................................................................ 18, 20, 27, 28

*Small v. Implant Direct Mfg., LLC*,
2014 WL 5463621 (S.D.N.Y. Oct. 23, 2014) ........................................................ 9, 10, 20

*Stone Basket Innovations, LLC v. Cook Medical LLC*,
892 F.3d 1175 (Fed. Cir. 2018) ...................................................................................... 9

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
675 Fed. Appx. 1001 (Fed. Cir. 2017) .......................................................................... 12

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
976 F. Supp. 2d 794 (E.D. Va. 2013) ............................................................................ 19

*Veracode, Inc. v. Appthority, Inc.*,
137 F. Supp. 3d 17 (D. Mass. 2015) .............................................................................. 15

*Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*,
2019 WL 3082314 (E.D. Tex. July 15, 2019) ............................................................... 26

*YYZ, LLC v. Pegasystems, Inc.*,
2016 WL 1761955 (D. Del. May 2, 2016) ..................................................................... 15

**Statutes**

35 U.S.C. § 101 .................................................................................................................. 2

35 U.S.C. § 282 ................................................................................................................ 10

35 U.S.C. § 285 .................................................................................................................. 8

**Rules**

Fed. R. Civ. P. 54(d) ....................................................................................................... 17

## I.      INTRODUCTION

Amazon.com, Inc. ("Amazon") cannot establish that Plaintiff Virginia Innovation Sciences, Inc. (now Innovation Sciences, LLC, hereafter "Innovation") litigated this case frivolously or that Innovation's allegations were objectively baseless.[1] Amazon has not established that fee shifting is appropriate in this case.

A fee award under Section 285 of the Patent Act can properly serve to discourage exceptional conduct that abuses the litigation process and needlessly consumes the scarce time of the court. The parties agree on this point. The award of fees, however, is <u>not</u> to be treated as "a penalty for failure to win a patent infringement suit," *NetTalk.com, Inc. v. Magicjack Vocaltec Ltd.*, 2015 WL 10015379 (S.D. Fla. Nov. 20, 2015) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1753 (2014)), and Section 285 of the Patent Act was <u>not</u> enacted to chill the exercise of the First Amendment right to petition the government for the redress of grievances. Amazon's demand for attorneys' fees falls squarely within these preclusions and should be denied.

Amazon makes no argument that Innovation engaged in discovery misconduct or other vexatious litigation tactics. Rather, Amazon attempts to justify the award of fees by repeatedly attacking Innovation's legitimate patent enforcement efforts as "extortion" and applying hindsight to assert that Innovation must have known that it could not win. As support for its fees request, Amazon relies upon the facts that: (1) Amazon prevailed on Innovation's so-called "signal conversion" patents under Section 101 of the Patent Act at the motion to dismiss stage; (2) Amazon prevailed on the other three patents at the summary judgment stage; and, most

---

[1]  A new Texas corporation, Innovation Sciences, LLC was formed in 2018 and the plaintiff herein, Virginia Innovation Sciences, Inc., was merged into that new corporation, making Innovation the successor here.

surprisingly, (3) that Innovation's subsequent filings warrant an award of fees in this action. In presenting its attacks on Innovation, Amazon ignores Innovation's repeated demonstrations of good faith. Worse, Amazon distorts the record, in particular the comments of Judge Moore at the Federal Circuit, to manufacture a basis to suggest that Innovation never had a legitimate theory of infringement. As demonstrated below, that was not Judge Moore's point. Though ultimately having lost, Innovation's infringement contentions in this case were at all times meritorious.

### A.     Procedural History

Innovation initiated this litigation on July 5, 2016, asserting three groups of patents against Amazon. The first group, consisting of 8 patents, involve the conversion of multimedia signals for display.[2] The patents in this group have been referred to as the so-called '492 patent family, the family being named after the oldest of the asserted patent within that group. On January 5, 2017, this Court granted Amazon's motion to dismiss finding that all eight patents in the '492 patent invalid under 35 U.S.C. § 101 as being directed to patent-ineligible subject matter. *See* Dkt. 58. This Court entered partial judgement on that issued on January 5, 2017. Innovation also asserted a ninth, related patent, U. S. Patent No. 8,135,398 ("the '398 patent"), which Amazon did not challenge under Section 101. Like the patents in the '492 patent family, the '398 patent is directed to the delivery of multimedia content.[3]

Each of the other two groups of patents asserted against Amazon consist of one patent each. Specifically, Innovation asserted U.S. Patent No. RE46,140 ("the '140 reissue patent") and U.S. Patent No. 9,369,844 ("the '844 patent"). The '140 reissue patent disclosed and claimed an

---

[2] "Multimedia" simply means two forms of media – most commonly audio and video.
[3] Innovation had previously successfully asserted the '398 patent against other companies, including Samsung.

improved computer network system for online shopping in which communications are switched from a first channel to a second, more secure communication channel upon entry of a purchase command. As it had with the '492 patent family, Amazon moved to dismiss the claim directed to the '140 reissue patent on the grounds that the '140 reissue patent was invalid under Section 101. This Court denied that motion on March 8, 2017. (Dkt. 79). The asserted claim of the '844 patent is directed to a product re-ordering system. Innovation's infringement claims under the '398, '844 and '140 patents proceeded to a *Markman* claim construction.

On August 18, 2017, this Court issued a *Markman* claim construction order that resolved the parties' disputes as to claim terms in the '398 patent, the '844 patent and the '140 patent. (Dkt. 139). As to the '398 patent, this Court rejected Amazon's proposed constructions for 3 out of 5 disputed claim terms outright but adopted Amazons constructions for the remaining two disputed terms. *Id.* at 7-23. This Court also split the claim constructions for the '844 patent, adopting a construction neither party had presented for two terms, adopting Innovation's position as to a third dispute, but adopting Amazon's constructions for the other two disputed terms. *Id.* at 24-43. Finally, the Court rejected Amazon's proposed construction for the only claim term at issue of the '140 reissue patent. *Id.* at 43-47. In short, the *Markman* order delivered the parties a mixed bag, with each side winning some and losing some.

Even so, this Court's *Markman* order required Innovation to rethink its case as to both the '844 patent and the '398 patent. Amazon's counsel made that same point on August 22, 2017, advising Innovation of Amazon's view that Innovation could not proceed with its infringement contentions as to either of those patents. As to the '398 patent, Amazon asserted that under this Court's claim construction:

3

> … "the destination device must be established as the destination before
> before the media content is received" at the user's cell phone.  *Id.* at 33.
> VIS has disclosed no theory that is viable after the Court's construction.

Amazon letter is attached as Exhibit 8 to Amazon's motion. (Dkt. 254-9). As to the '844 patent,

Amazon asserted that Innovation could not prove infringement because the accused Dash Button

does not detect any change in the condition of an item. *Id.* Innovation reevaluated its case in light

of this Court's *Markman* constructions and determined that it would stipulate non-infringement

as to the '844 patent (and Innovation did so) but that this Court's claim constructions did not

foreclose infringement of the '398 patent.

This Court's construction, however, did require Innovation to limit its infringement

contention to the situation where the media content is received *after* the Miracast connection has

been established. *See* Dkt 203, p. 5 (court's summary of Innovation's limited infringement

contention). In that situation, it was Innovation's contention that the accused products infringe

because the destination device is established *before* the media content is received. That is the

limited infringement position Innovation presented through summary judgment.

At summary judgment, this Court did three things. First, it accepted Innovation's

stipulation of non-infringement of the '844 patent. Second, it granted Amazon's motion for

summary judgment that the '140 patent was invalid as being directed to ineligible subject matter

under Section 101. And finally, this Court granted summary judgment of non-infringement of the

'398 patent. While this Court appears to have been leery of Innovation's infringement contention

directed to the receipt of media content after the Miracast connection had been established, this

Court granted summary judgment "because Miracast does not transmit a multimedia content item

'in the format received' by the wireless terminal device from the source." *See* Dkt. 203, p. 5-6.

This Court had construed the claimed "multimedia content item" so as to require that the signal

have the "same format." That requirement, however, is not literally present in the asserted patent claim but was added through construction. Nevertheless, because the incoming and outgoing signals carrying the claimed "multimedia content item" and because are both in the H.264 compressed signal format, Innovation believed that this limitation was met even under this Court's construction of that term. *See, e.g.*, Innovation's Opposition to Motion for Summary Judgement of No Infringement. (Dkt. 169, pp. 9-11).

In application of the "same format" requirement at the summary judgment stage, however, this Court clarified its construction of the claimed "multimedia content item" and found that frame rate, the video resolution and the visual display of the media content sent to the destination device must all be the same as that received from the source.  It was on that basis, <u>not</u> the argument Amazon advanced in its August 27 correspondence, that this Court found that Amazon did not infringe the patent. *Id.* at 7.

### B.    Related Legal Proceedings

Innovation appealed from these two determinations and from the adverse aspects of this Court's August 18, 2017 claim construction. During oral argument in that appeal, Judge Moore asked Innovation's counsel if its infringement claim was viable if only one of this Court's '844 patent claim constructions were reversed. The following exchange makes the point:

> JUDGE MOORE:  But that's not my question. It's not my question whether you have to have that reversed. My question is there are four separate claim terms, each which probably result in noninfringement. If we reverse only one, how do you not have noninfringement?

CAFC Hearing Transcript, p. 41 (Attached as Exhibit 1 to Berquist Declaration ("Decl.")). Although Amazon gives great weight to that exchange in its motion, it was in that context, and only that context, that counsel for Innovation was unable to provide a definitive answer. Innovation went into that hearing believing that more than one aspect of this Court's claim

constructions would be reversed – it had no prior knowledge of which term might be re-construed, how that term might be re-construed, or how the Federal Circuit's decision would impact the viability of Innovation's infringement claims on remand.  It was for those reasons that Innovation could not take a position at the oral hearing before the Federal Circuit.  But it was in that context that Judge Moore warned Innovation that it should not proceed on remand if reversal of one construction was insufficient to provide a good faith basis to continue.

The Federal Circuit reversed this Court's claim construction but did so only as to one claim element of the '844 patent.[4] Innovation re-evaluated its infringement claims in light of the Federal Circuit decision and determined that it could not maintain its infringement claim against Amazon under the '844 patent. Accordingly, Innovation entered a stipulation of dismissal with prejudice on November 21, 2019. (Dkt. 249). That was the second time that Innovation demonstrated its good faith regarding its claims under the '844 patent – the first being when Innovation stipulated to non-infringement based on this Court's claim construction ruling. The Federal Circuit did not award fees to Amazon but did award costs. The Federal Circuit subsequently denied Amazon's costs request.[5]

Though not relevant to the question of fees in this action, Amazon devotes significant portions of its fee request motion to Innovation's conduct in _other_ litigations.  Amazon focuses its criticisms on:  (1) Innovation's decision to file, and voluntarily dismiss, a second litigation against Amazon in this District, (2) Innovation's decision re-organize its corporate structure and relocate to Texas, and (3) Innovation's decision to institute a third round of litigation against Amazon. Not one of these arguments bear on whether Amazon should be awarded fees in _this_

---

[4]  A copy of that Decision is provided as Berquist Exh. 9.
[5]  The Federal Circuit denied costs because contrary to its initial submission, Amazon's counsel conceded that it did not pass on the printing costs to Amazon but accounted for those costs through its billings for fees.

action and Amazon's speculation that these actions demonstrate bad faith on Innovation's part are misplaced.

As even just the filing in this case demonstrates, Innovation is the owner of a diverse patent portfolio involving technologies directed to, among other things, signal conversion, on-line shopping technologies, and inventory management. Innovation also owns a substantial portfolio of patents directed to what is called smart home technologies. Though Amazon boasts of its reputation for innovation, many of its innovative developments were made by others. For example, the signal conversion technology is at the heart of Amazon's FireTV products. Though its patents directed to signal conversion and video display on alternate display were found invalid under Section 101, Innovation's work in that area pre-dated Amazon's introduction of its FireTV products by years. That was why Innovation initiated the present action against Amazon asserting the patents in the '492 patent family and the '398 patent. The same hold true of the disputes as to the on-line shopping technology. Innovation's developments pre-date Amazon's introduction of its on-line payment and inventory management products. That is why Innovation included both the '140 reissue patent (on-line payment) and the '844 patent (inventory management) in this action.

Amazon subsequently introduced a new line of products which include the so-called smart home technology, including the Echo line of products. The smart home technology facilitates the control of smart devices within a home, such as lights, locks and thermostats, through a central communications hub. Amazon also modified its existing line of FireTV products to add this smart home functionality. Once again, these Amazon developments trailed Innovation's work in that area and Innovation brought suit against those products, first in this District (where it was assigned to a different division of the court), and later, following voluntary

7

dismissal of that action under Fed.R.Civ.P. 41(a), in the Eastern District of Texas. None of the patents asserted in the Texas action overlap with the patents asserted in this action and Amazon should not have asked this Court to assess the propriety of Innovation's filing in Texas. That case was assigned to Judge Mazzant and he has already ruled on Amazon's challenges to Innovation's Texas filing. Berquist Decl., Exh 2. That case is now in the final month of discovery and Amazon should not ask this Court to second guess Judge Mazzant's decision or to weigh in on substantive issues that may be presented in that action.

The fact that Innovation has been forced to assert so many patents against Amazon demonstrates the breadth of Innovation's patent portfolio and Amazon's use of that technology – it does not support Amazon's groundless extortion accusations.

## II.   ARGUMENT

Amazon's request for attorneys' fees rests on three general grounds: (1) that none of the patents in the '492 patent family or the '140 reissue patent should have been asserted because Innovation had no grounds upon which to believe these patents were valid under Section 101; (2) that Innovation lacked a reasonable basis to believe that the claims of the '844 patent, the '140 reissue patent or the '398 patent were infringed; (3) that Innovation should have stipulated to non-infringement of the '398 patent in view of Court's claim construction order; and (4) that Innovation has instituted several patent infringement actions against Amazon.

### A.   Legal Standard

Under the so-called "American Rule," the prevailing party is ordinarily not entitled to collect attorneys' fees from the loser – each side bears its own fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975). Section 285 of the Patent Act creates an exception to that rule, but only in "exceptional cases." 35 U.S.C. § 285. An exceptional case

is one "that stands out from others with respect to the substantive strength of a party's position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175, 1178 (Fed. Cir. 2018) (citing *Octane Fitness*)  As the Supreme Court noted, the word "exceptional" means "uncommon," "rare" "not ordinary" and "out of the ordinary." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014).  The question of exceptionality is to be determined in light of the totality of the circumstances.  *Id.*

The basis for awarding fees remains a high one even after *Octane Fitness*.  *See Small v. Implant Direct Mfg., LLC*, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014).  The predominant factors to be considered, though not exclusive, are "bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, litigation misconduct, and (in the case of an accused infringer) willful infringement." *Dietoal Innv., LLC v. Wegmans Food Markets, Inc.,* 126 F. Supp.3d 680, 684 (E.D. Va. 2015).  A court will generally not find a party with a good-faith argument in favor of its position to have made "exceptionally meritless" claims. *Small*, 2014 WL 5463621, at *3; *see also EON Corp. IP Holdings, LLC v. Cisco Sys., Inc.*, 12-CV-01011-JST, 2014 WL 3726170 (N.D. Cal. Jul. 25, 2014) (denying fees request even where the plaintiff's argument was "quite stretched" and its conduct "difficult to explain"); *Gametek LLC v. Zynga. Inc.*, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (attorneys' fees denied because plaintiff's conduct was not frivolous or objectively unreasonable).

District courts have awarded fees when a patentee, for instance, "had a history of bringing nuisance value cases, was motivated by a bad faith desire to bankrupt the alleged infringer with litigation costs, resisted discovery requests, made no reasonable effort to verify the

defendant's products infringed, engaged in inequitable conduct at the PTO, or made misrepresentations during the litigation." *RLIS. Inc. v. Cerner Corp.*, 2015 WL 5178072, at *9-*10 (S.D. Tex. Sep. 3, 2015); *see Gametek LLC*, 2014 WL4351414, at *3 (showing that a case is exceptional when it concerns egregious behavior). "[M]ost cases awarding fees continue to involve substantial litigation misconduct." *Small*, 2014 WL 5463621, at *3. Innovation has not engaged in any such misconduct and Amazon does not base its motion on that grounds. Rather, Amazon anchors its fees request on the allegation that Innovation's infringement allegations were objectively baseless. As demonstrated below, none of Innovation's allegations were objectively baseless and Amazon's motion should be denied.

**B.     Innovation's Substantive Positions Were Reasonable**

1.     The Section 101 Issues

Pursuant to Section 282 of the Patent Act, a patent is presumed to be valid. 35 U.S.C. § 282; *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cr. 2019); *CertusView Techs., LLC v. S & N Locating Services*, LLC, 287 F.Supp.3d 580, 587 (E.D. Va. 2018). That presumption, as even to Section 101 challenges, is heightened were the patent office issued the patents after the Supreme Court's holdings in *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208 (2014) and *Bilski v. Kappos*, 561 U.S. 593 (2010). *CertusView*, 287 F.Supp.3d at 594 (noting that some of the disputed claims there issued after *Bilski* while others, like 5 of those at issue here, issued after *Alice*).

Undeterred by the statutory presumption that applies here, Amazon asks this Court to find that Innovation had no reasonable basis to believe that the '140 patent or any of the patents in the '492 patent family were valid in light of *Alice*. But the state of the law with respect to the question of "usefulness" under Section 101 has been in a state of flux for at least the past decade

or more. Indeed, in an effort to keep up with the changes, the USPTO has been repeatedly updated its guidance on the application of Section 101, the most recent of which issued on October 17, 2019.  A copy of that guidance is attached as Berquist Exh. 3. Indeed, as recently as July 2019, the Federal Circuit recognized the disarray surrounding the state of the law regarding Section 101.  In the multiple dissenting and concurring opinions, the Federal Circuit nearly begged the Supreme Court to take the issue up again to clarify its prior decisions regarding Section 101.  *See Athena Diagnostics, Inc. v. Mayo Collaborative Service, LLC*, 927 F.3d 1333 (Fed. Cir. 2019).

More than one court, however, has awarded attorneys' fees to defendants that have prevailed under Section 101 even in light of the statutory presumption of validity and the evolving application of that section.  But the circumstances upon which courts have done so are not present here.   Indeed, courts have awarded fees where the same or similar claim had previously been found invalid as directed to unpatentable subject matter, involving patents directed to business or financial methods, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc*., 2017 WL 6062460, at *4 (Fed. Cir. 2017) (finding claims at issue there "objectively ineligible" because they were nearly identical to the financial business method claims the Supreme Court rejected in *Bilski* and *Alice*); *see also My Health, Inc. v. ALR Techs., Inc*., 2017 WL 6512221, *4 (E.D. Tex. December 12, 2017) (finding patent directed to a method of tracking a patient's compliance with treatment guidelines obviously invalid under Section 101). As such, those cases closely parallel the claims rejected in *Alice* (invalidating claims directed to the use of a generic computer run by a third-party intermediary to mitigate settlement risk).

Nor were Innovation's patents obviously invalid under *Alice*. The '140 reissue patent is directed to an improved network computing system to support on-line shopping and the patents

in the '492 patent family are directed to an apparatus that receives compressed video signals from a wireless source and converts those signals for viewing on an alternate display. These patent claims are directed to electronic devices (in the case of the patents in the '492 patent family) and a network computing system (in the case of the '140 reissue patent) and each of the asserted claims of those patents include specific hardware components. Unlike many of the patents directed to business methods and mathematical algorithms, the validity of many patents directed to the improvement of electronic devices and computer networks have been affirmed even after *Alice*. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) (finding improvement to the way computers operate patent-eligible); *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1264 (Fed. Cir. 2014) (distinguishing claims at issue there from those that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet); *BASCOM Global Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (unconventional ordering of even conventional components can be patentable under Section 101); *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. Jan. 25, 2018) ("directed to a specific improvement in the capabilities of computing devices" satisfy step 1 of the *Alice* test as long as they are not "an 'abstract idea' for which computers are invoked merely as a tool"); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 Fed. Appx. 1001, 1004-05 (Fed. Cir. 2017) (method and system for reducing the time it took traders to place trades when trading electronically recited an inventive concept under *Alice* step 2).

A brief discussion of the holding in *DDR* demonstrates the reasonability of Innovation's belief in the validity of the patents it asserted against Amazon.  In *DDR*, the Federal Circuit affirmed the patent eligibility of a patent directed to an "e-commerce outsourcing system."  The

claimed system in *DDR* included two elements (1) a computer store containing data and (2) a computer server at an outsource provider.  The system of *DDR* facilitated the transfer of a web page containing information regarding an item available for purchase to the browser of a computer user for local display.  In assessing the patent eligibility of that subject matter, that court noted that the patent claims challenged there:

> … do not merely recite the performance of some business practice known from the pre-Internet along with the requirement to perform it on the Internet.  Instead, the claimed solution is necessarily rooted in computer technology in order *to overcome a problem specifically arising in the realm of computer networks.*

*DDR*, 773 F.3d at 1257 (emphasis added).  It was Innovation's belief that the above analysis could have been written for this case. Claim 17 of the '140 reissue patent is directed to the ordered steps required by a computer network having numerous, specific structural components. As to the steps, claim 17 requires at least two different servers, one supporting product review and selection, and a second to support payment after the buyer has selected a product for purchase via the first server, with the payment communications occurring over a second, more secure exchange.

Claim 17 of the '140 reissue patent identifies and addresses a problem created by the use of e-commerce. Specifically, switching from the server that supports product browsing and selection to a separate payment server reduces the traffic on the shopping server. The claimed approach does that by removing the payment transaction from the server supporting product review and selection – not only is the shopping server not burdened by the payment transaction, the payment information must be more securely transmitted. The amount of data required to support a more secure, encrypted transmission is significant. Thus, like the network in *DDR*, the method of claim 17 overcomes a problem arising in the context of computer networks. While it lost on the issue, Innovation's belief in the validity of the '140 reissue patent was entirely

reasonable – it solved a problem the present in the field of computer networks not that different than the patents affirmed in *DDR*.

Four other facts weigh against an award of fees based on the invalidation of Innovation's patents under Section 101. First, three of the eight asserted patents in the '492 family issued after the Supreme Court's decisions in both *Bilski* and *Mayo*.[6] The remaining five '492 family patents, which are continuations of the '492 patent, along with the '140 patent, all issued after the Supreme Court's *Alice* decision. It was not unreasonable for Innovation to conclude that patents issued by the USPTO under the prevailing *Bilski* and *Mayo* standards, and later in light of the *Alice* standard, claimed patentable subject matter. *See Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1258 (Fed. Cir. 2012); *Garfum.com Corporation v. Reflections by Ruth*, 2016 WL 7325467, at *4 (D. NJ. Dec. 16, 2016). This is especially true where none of the patents in the '492 patent family (or the '140 reissue patent) are directed to business methods and all include specific structural components.

The USPTO's issuance of the five '492 continuation patents and the '140 reissue patent *after* the *Alice* decision is objective evidence that Innovation's eligibility positions were not baseless. *Garfum.com*, 2016 WL 7325467, at *4 (reversing exceptionality finding under § 285 based on evidence that the USPTO's later allowance of similar claims belied earlier finding that it "should have been obvious" that claims were invalid under § 101). Given this backdrop, found, it was not unreasonable for Innovation to rely on the qualified examiners at the USPTO for the three pre-*Alice* patents either. *Id.*; *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 2015 WL 1284826, at *2 (E.D. Tex. Mar. 20, 2015) (fact that patent issued after Supreme Court

---

[6] The '492 and '711 patents issued March 1, 2011 and November 1, 2011, respectively, each after the Supreme Court's decision in *Bilski*, on June 28, 2010. The '471 patent issued April 29, 2014, after *Mayo*, on March 20, 2012, but before the *Alice* decision on June 19, 2014. The remaining patents of the '492 family, and the '140 patent, all issued after the *Alice* decision.

§ 101 decisions was *prima facie* evidence against argument patent was obviously invalid in view of those decisions); *In re Protegrity Corp.*, 2017 U.S. Dist. LEXIS 27300, at *20 (N.D. Cal. Feb. 27, 2017).

Indeed, most of the courts who have addressed § 285 where a patent owner lost a § 101 dispute have concluded the case was not exceptional and denied fees. *See, e.g.*, *Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, 2017 U.S. Dist. LEXIS 160700, at *23-*24 (W.D. Mo. Sept. 29, 2017) (finding the evolving legal landscape around § 101 precluded finding patent owner's § 101 positions were unreasonable as the law post-*Alice* was in flux); *Credit Card Fraud Control Corp. v. Maxmind, Inc.*, 2016 WL 3355163 at *2 (N.D. Tex. Apr. 7, 2016) (plaintiff's litigation position regarding § 101 "was not frivolous or objectively unreasonable"); *YYZ, LLC v. Pegasystems, Inc.*, 2016 WL 1761955 (D. Del. May 2, 2016) ("the § 101 analysis is an evolving state of the law and a difficult exercise, which does not lend itself to, *e.g.*, shifting fees pursuant to 35 U.S.C. § 285"); *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 101 (D. Mass. 2015) (finding case not exceptional where case arose "in a highly technical area of rapid growth and development" with shifting law); *Data Scape Limited v. Spotify USA Inc.*, CV 19-4367 PSG, at p. 7 (C.D. Cal. December 3, 2019) (noting the importance of allowing attorneys the latitude necessary to challenge evolving aspects of the law without the chill of economic sanctions), copy attached as Berquist Exh. 4.

Second, as to the '140 reissue patent, the USPTO examiner's handling the reissue application issued a rejection under Section 101 *and* Innovation overcame that rejection. The reissue application that became the '140 reissue patent, application number 13/230657, was a continuation of reissue application 12/453,484 ("the '484 reissue application"). On August 20, 2009, the examiner handling the '484 reissue application issued an office action rejecting all

claims presented under Section 101. Berquist Exh. 5, p. 3. Innovation's counsel responded to that rejection in an amendment dated February 19, 2010, amending the claims and arguing that the amended claims were patentable under Section 101. Berquist Exh. 6, p. 6. The examiner issued a subsequent office action on April 26, 2010, again rejecting the claims presented but not reasserting the previous rejection under Section 101. Berquist Exh. 7, pp. 2-6. Thus, the USPTO considered the Section 101 issue before issuing the '140 reissue patent. Like the presumption of validity, this fact weighs strongly against finding that Innovation's belief that its patents were valid.

Third, and again with regard to the '140 reissue patent, this Court denied Amazon's motion to dismiss based on Section 101. (Dkt. 79). That denial further supports finding that Innovation's belief in the validity of its patent was warranted. Recognizing the difficulty of harmonizing its assertion that Innovation's position was baseless with this Court's denial of its motion to dismiss, Amazon resorts to accusing Innovation of having mislead the court. Contrary to Amazon's assertion, however, Innovation never argued that it had invented a new way of switching from one computer (the merchant's computer) to another (the payment computer). Rather, like the patentee in *DDR*, Innovation had invented a way to address data problems associated with the prior art on-line shopping networks – specifically by splitting communications with a merchant server (communications with which need not be encrypted) from those with a payment server (communications with which use data-heavy encryption) after a purchase decision was made. (Dkt. 76, pp. 6-8, 18-21 (describing how dividing communications between servers overcame network problems)). While a "switch" from one server to the other is involved, Innovation's invention was the network architecture – two separate communication channels. Although ultimately losing on that issue, Innovation

respectfully submits that its position was not objectively baseless, claims with less structure have passed muster after *Alice*. *See, e.g., DDR,* 773 F.3d at 1264; *BASCOM,* 827 F.3d at 1350.

Finally, Amazon waived its right to seeks attorneys' fees in connection with the invalidation of the patents in the '492 patent family. All eight patents in the '492 patent family were found invalid under Section 101 by Order entered on January 5, 2017. (Dkts. 57, 58).  Upon the motion of Amazon, this Court entered judgment under Rule 54(b) as to the invalidation of these patents on February 9, 2017. (Dkt. 74). Innovation appealed from that judgment on February 15, 2017. (Dkt. 77). Amazon made no filing for attorneys' fees or costs following entry of that judgment. Accordingly, Amazon waived its right to seek either here.  *IPXL Holdings, LLC v. Amazon.com, Inc.,* 430 F3.d 1377, 1386 (Fed. Cir. 2005) (motion to declare a case exception and to obtain attorney fees must be filed within the 14 days required by Fed. R. Civ. P. 54(d)); *Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc*., 2012 WL 5473752 (E.D. Va. Nov. 9, 2012) (same). That waiver requires denial of the fees request to the extent that Amazon's request relies upon the finding that the patents in the '492 patent family are invalid under Section 101.

    2.    <u>The Infringement Issues</u>

    a.    The '140 Reissue Patent

Apparently recognizing problems with its assertion that Innovation's belief in the validity of the '140 reissue patent was objectively basis, Amazon buttresses that argument by also asserting that an award of attorneys' fees is warranted because Innovation's infringement allegations under that patent were baseless.  But Amazon lost the only claim construction issue it presented as to this patent (Dkt. 139, at 47) and the question of Amazon's infringement was never decided – the '140 reissue patent having been invalidated under Section 101.  To the extent

this Court evaluated the infringement of the '140 patent, that analysis was limited to the claim construction and it favored Innovation, not Amazon.

Moreover, the non-infringement argument Amazon presents here is extremely weak. Specifically, Amazon argues that the accused Amazon Pay could not infringe because that service facilitates HTTPS communications between the shopper and the merchant server and HTTPS communications between the shopper and the Amazon payment server.  (Dkt. 255, n. 4). In other words, Amazon argues that it cannot infringe because aspects of the communications between the shopper and the merchant's server may be secure. But claim 17 of the '140 patent expressly requires only that less secure communications occur before the buy indication and communications occurring after the "buy" command be more secure. If Amazon wanted a claim construction that precluded secure communications with the merchant server before the switch was made, even if momentary or transitional, it should have sought such a construction. Amazon Pay's system facilitates less secure communications with a merchant server and more secure communications with the payment server after a buy decision is made.  By doing so, the Amazon service reduces the data traffic that must be exchanged with a merchant server while still protecting the more sensitive payment data exchange – the very purpose of the invention and exactly what claim 17 requires.

Even if Amazon's non-infringement contention for the '140 reissue patent had been successful, and that issue was not decided, that would not render Innovation's contrary infringement contentions objectively baseless. *See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (the "correctness or eventual success" of a party's litigation position is not determinative of the attorney fee issue; "[a] party's position on issues of law ultimately need not

be correct for them not to 'stand[] out,' or be found reasonable" (alteration in original)); *see also Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) (same).

> b.    The '398 Patent

Amazon argues that Innovation's infringement contentions under this patent were objectively baseless both before and after this Court's claim construction.  Both contentions are wrong.

As this Court is aware, Innovation successfully asserted the '398 patent in prior litigation. *See Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 976 F. Supp. 2d 794 (E.D. Va. 2013). After years of litigation and a trip to the Federal Circuit, Innovation and Samsung settled their dispute.  Critically, that settlement did not occur until after Judge Davis of this District construed the term "*multimedia content item . . . destined for a destination device,*" the very claim language this case turned on. Judge Davis found that the intrinsic evidence, including the plain language of the dependent claims, "describe a number of ways to identify the destination device to which a multimedia content item will be routed." Accordingly, and because "[t]here is simply nothing readily apparent in the patents, themselves, requiring that the multimedia content item contain a unique device identifier" to identify a destination device, Judge Davis rejected Samsung's position that "a multimedia content item [] uniquely identifies the destination device on which it is to be displayed" and agreed with Innovation that no construction was necessary.  *Id.* at 819-23.

Innovation relied on Judge Davis's claim construction ruling in the *Samsung* case in setting forth the same arguments in the instant matter. Innovation's reliance on Judge Davis's opinion as extrinsic evidence, for the construction of the term "*destined for a destination device located within the home location,*" was reasonable and not objectively baseless; and it was "consistent with, rather than contradictory to, the intrinsic evidence." *See Robbins Co. v.*

*Herrenknecht Tunnelling Sys. USA, Inc.*, No. 5:13-cv-2113, 2015 WL 3454946, at *16-*17 (N.D. Ohio May 29, 2015) (finding that reliance on a dictionary definition of a disputed term was reasonable and not objectively baseless). Indeed, there can hardly be more reasonable evidence in support of a claim construction position than the fact that a Court in another matter adopted that same construction. The fact that this Court disagreed with both Judge Davis and Innovation does not render Innovation's prior understanding of that term objectively basis.

Innovation set forth good faith arguments with respect to the interpretation of each of the disputed terms of the '398 patent, winning the majority of those disputes, so it cannot be said that Innovation advanced "exceptionally meritless" claims. *See Small*, 2014 WL 5463621, at *3. Innovation's claim construction arguments fall into the category of disputes over claim meaning that, while unsuccessful, were nonetheless legitimate to submit to the Court for resolution. That this Court did not adopt all of Innovation's claim construction positions is insufficient to support a finding of exceptionality within the context of § 285. *See Newegg*, 793 F.3d at 1348; *see also Raylons,* 700 F.3d at 1368. It bears note that Innovation won the majority of the claim construction issues presented to this Court from the '398 patent – having lost only "multimedia content item" and "destined for a destination device," the very terms Innovation had won in the earlier *Samsung* litigation.

On August 22, 2017, Amazon wrote to Innovation to demand that Innovation stipulate to non-infringement of the '398 patent based on this Court's construction of the "destined for" claim language. Amazon Exh. 8. Upon reflection, Innovation limited its infringement analysis to the situation where multimedia signals are received after the Miracast connection was established. In that situation, the destination of the signal is known prior to receipt by the intermediate device.

Innovation's infringement theory following claim construction was reasonable even in light of this Court's construction of the terms "destined for a destination device" and "multimedia content item." Substantial evidence demonstrated that the Fire TV/Stick products function as follows: multimedia content in a compressed or encoded format, such as H.264 video or AAC/AACL audio, is received at a mobile phone from outside a home location. The phone decompresses or decodes the multimedia content and displays it on the phone through a display buffer, a copy of which is retained in H.264 or AAC/AACL format. The copy is then sent through WiFi to the Fire TV/Stick, using the Miracast protocol. The Fire TV/Stick decompresses this content and converts it to a signal for display on a television, connected to the Fire TV/Stick by an HDMI cable, after it determines an appropriate format and pixel encoding capability of the television.  (Dkt. 158 at 2-4).

Innovation argued that because a Miracast connection, once established, enables a video streamed to a mobile phone to be streamed to the Fire TV/Stick *without additional input from the user*, the video content is "directed" to the television, within the bounds of the Court's construction. (Dkt. 158 pp. 3-4, 9-19; Dkt. 169, pp. 3-12, Dkt. 176, pp. 3-5, 8-13). Furthermore, because the multimedia content received by the mobile phone and at the Fire TV/Stick using Miracast are both in the same format, for instance, the compressed H.264 video format, the accused products operated within the bounds of the Court's construction of "multimedia content item." *See, e.g.,* Dkt. 169, pp. 9-10. In response to Amazon's non-infringement position that Miracast transmits a new video stream, rather than that received by the phone, Innovation argued that the two videos need not be *exactly* the same, so long as they are in the same *format* and the original video still included in the retransmission.  *See, e.g.*, Dkt. 169, p. 11.

At summary judgment, Amazon did not dispute Innovation's understanding of Miracast or the Fire TV/Stick, or that the received and transmitted multimedia items are both in a compressed H.264 format. (Dkt. 166). Rather, Amazon's argument turned on the meaning of the word "format," – a word this Court introduced to the claim through construction of "multimedia content item." Although the Court never construed the word "format," or limited its definition in any manner, Amazon successfully urged this Court to limit that word on summary judgement to refer to the frame rate or resolution of the video even though the '398 specification itself contains no such limitation. (Dkt. 169 at 10). Amazon based that summary judgment argument on expert reports submitted after the claim construction and just before summary judgment. Because this Court adopted Amazon's summary judgment argument, summary judgment largely turned on the "format" not being the same.  That ruling, however, clarified what the Court meant by "format" in its *Markman* ruling, a clarification that Innovation could not have known prior to the summary judgment ruling.

Innovation conducted its infringement strategy for the '398 patent in good faith, strictly following the Court's constructions of disputed terms and precisely identifying how and where Amazon's products infringe. The fact that Amazon's proposed constructions were nevertheless adopted does not provide any basis to find that Innovation's infringement strategy was frivolous or baseless, or that it pursued this litigation solely for a nuisance settlement. *See Lumen View Tech. LLC v. Findthebest.com, Inc.,* 24 F. Supp. 3d 329, 335-36 (S.D.N.Y. 2014); *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 544 (Fed. Cir. 2011) ("Unless an argument or claim asserted in the course of litigation is so unreasonable that no reasonable litigant could believe it would succeed, it cannot be deemed objectively baseless for purposes of awarding attorney fees.").

c.      The '844 Patent

Innovation stipulated to non-infringement of the '844 patent following entry of this Court's claim construction order. Accordingly, Amazon's fees request is limited to arguing that Innovation never had a plausible basis to assert the '844 patent. But prior to the claim construction, Innovation's proposed claim constructions and infringement theories were supported by reasonable interpretations of the overall claim language and the specification. Indeed, Innovation won many claim construction issues. Moreover, Innovation's decision to stipulate to non-infringement following claim construction demonstrates good faith and counsels strongly against finding this case exceptional.

The parties disputed the constructions of five terms of the '844 patent. This Court rejected both parties' proposals for two of those terms, creating its own constructions for those terms, adopted Innovation's construction for the third term, and adopted Amazon's proposed constructions for the remaining two. On appeal, the Federal Circuit reversed just one of this Court's constructions and clarified another. Unfortunately, even that was not enough to support an infringement theory on remand. Accordingly, Innovation agreed to dismiss the '844 patent infringement claims against Amazon with prejudice, once again demonstrating Innovation's good faith.

Innovation's position was that the plain meaning of the words "updated condition of a merchandise" should apply – that and updated condition is simply a condition of a merchandise at a more recent time, regardless of whether that condition has changed. (Dkt. 106, pp. 17-19). The '844 patent includes a whole section dedicated to inventory management. *See, e.g.,* '844 patent, column 12, lines 29-57. Innovation based its argument on the fact that the literal language is well understood and requires nothing more than an update on a condition – not that a change

first occur. An update may detect a change, but a change is not required for an update. In addition, Innovation noted that claim 37, which depended on claim 35, added a sensor to detect changes in the condition of the merchandise (and nothing more). Although Innovation lost that argument, Innovation's claim construction position in favor of the ordinary meaning was neither frivolous nor an abusive litigation tactic. *Net Talk.com, Inc. v. Magic Jack Vocltec Ltd.,* 2015 WL 10015379, at *3 (S.D. Fl. Nov. 20, 2015) (claim construction, though unlikely to prevail, was legitimate and does not support finding exceptional; "push and pull over the scope of claim language is common in patent litigation."); *Calypso Wireless, Inc. v. T-Mobile USA, Inc.*, 2015 WL 1022745, at *5 (E.D. Tex. Mar. 5, 2015).

In Innovation's pre-claim construction view, activating the accused Dash Button may not detect *a change* in the condition of merchandise, but it did provide an updated condition of that merchandise (*i.e.,* its inventory level), thereby initiating a "purchase request," the focus of claim 35. Indeed, claim 35 then recites the architecture and steps for processing that purchase request. The only purpose of the Dash Button is to order additional product. Nor can it be said that Innovation's proposed constructions for any of the other disputed terms of the '844 patent were over-zealous. Innovation asked this Court simply to adopt the plain and ordinary meaning of each. In any event, Innovation demonstrated its good faith by stipulated to non-infringement in light of the claim construction, both before appeal to the Federal Circuit and after.

## C.   Innovation's Other Litigation

Amazon misuses Innovation's other legal filings to urge a finding that this case exceptional. Specifically, Amazon criticizes Innovation for filing a second action in this District in which Innovation again asserted the '844 patent against Amazon (along with two new patents). But contrary to Amazon's assertions, that filing in no way suggests misconduct on

Innovation's part. Innovation asserted the '844 patent a second time because Amazon refused to produce discovery as to its Dash Replenishment Service on the grounds that local practice limited Innovation's infringement allegations to just the Dash Button (both patents relate to the maintaining an inventory of household items). Accordingly, a second lawsuit was necessary in order to include Amazon's Dash Replenishment Service. That lawsuit was filed on August 8, 2017, ten days *before* this Court's August 18 claim construction order. (Dkt. 139).

Innovation voluntarily dismissed that second action under Rule 41(a)(1) shortly after it was filed. In doing so, Innovation created the time necessary to consider the impact this Court's claim construction had on the infringement allegations made against the Dash Replenishment Service under the '844 patent and to correct typographical errors identified in other patents asserted in that action. For example, Innovation noted several typographical errors in United States Patent No. 9,729,918 ('the '918 patent') asserted in that second action and asked the USPTO to issue a Certificate of Correction for that patent. A copy of that Certificate, issued on November 27, 2017, is attached as Exhibit 8 to the Berquist Declaration. Significantly, Innovation dismissed the second filing before Amazon answered or otherwise responded to that complaint. Innovation's dismissal is not indicative of any wrongdoing. Rather than serve as a basis to find Innovation's conduct exceptional, Innovation's decision to dismiss that second filed action demonstrates Innovation's good faith - the exact *opposite* of frivolous behavior. Moreover, if Amazon thought Innovation's filings in that case created a basis for costs or fees, it should have raised that issue with that Court then, not wait several years to add that allegation to a fee request from this Court.

In an effort to make Innovation's litigation tactics appear abusive, Amazon also criticizes Innovation's decision to file an action against Amazon in the Eastern District of Texas,

suggesting that Innovation's filing there is a sham. But Amazon raised those same arguments with Judge Mazzant in that District and lost. It should not be making those same arguments here. The patents at issue in this action are not asserted in Texas, and the focus of the Texas infringement action is smart home technology, not signal conversion or a computer network that supports on-line shopping (addressed by this Court). Innovation was created as a Texas corporate entity in order to benefit from the favorable tax treatments in that state. Its founder and principal, Dr. Anne Wong, moved to Texas for the same reason, merging Virginia Innovation Sciences, Inc. into Innovation. Judge Mazzant considered each and every one of Amazon's reasons for seeking transfer and denied Amazon's motion. *See generally Virginia Innovation Sciences, Inc. v. Amazon.com, Inc*., 2019 WL 3082314 (E.D. Tex. July 15, 2019).  Beyond providing no basis to argue that Innovation's Texas filing makes Innovation's contentions in this case baseless or frivolous, the collateral attack on Judge Mazzant's decision demonstrates a lack of respect of the Texas court by urging this Court to take a different view of the issue.[7] It is improper for Amazon to urge this Court to second guess Judge Mazzant.

Moreover, none of these filings warrant or even support an award of fees here. Innovation's three filings against Amazon were each tailored to specific technology, with the patents being asserted finding direct correspondence with Amazon's accused products. Amazon's effort to force the facts of this case to fit cases where fees were awarded are without merit. None of Innovation's filings bear any similarity to cases where plaintiff's filing strategies warranted an award of fees.  Unlike the patent owner in *Rothschild Connected Devices Innovations, LLC v. Guardian Protective Services, Inc*., 858 F.3d 383 (Fed. Cir. 2017), a case

---

[7]  Oddly, Amazon also submits that the priority claim Innovation makes in the Texas action is somehow relevant to the present fees motion. The priority date of the patents Innovation asserts in Texas is a substantive issue that Judge Mazzant will decide, should Amazon raise that issue there, which to date it has not. That issue has no place in this discussion.

relied upon by Amazon, Innovation did not assert one patent against 58 defendants in which the accused products ranged "from video cameras to coffeemakers to heat pumps. *Id*. at 1389. Nor has Innovation pursued a pattern of filing infringement actions for "the sole purpose of forcing settlement." *Id*. at 1389-90, citing *Newegg*, 793 F.3d at 1350.

This case is distinguishable from the remaining cases Amazon relies upon. In *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329 (S.D.N.Y. 2014), *affirmed* 811 F.3d 479 (Fed. Cir. 2016), the district court found that even though the plaintiff recognized that the accused infringer's product lacked a key element required by the asserted claims, it continued litigating the case in hopes of obtaining a nuisance settlement. *Lumen View*, 24 F. Supp. 3d at 335-36. That is not the case here. As to the '844 patent, Innovation's contention was that the Dash Button, when activated, sent a signal containing its unique identifier, and that receipt of that signal (item status signal) indicated that inventory of the item associated with that Button was low (updated condition of a merchandise), and a purchase request is initiated. When this Court entered its claim constructions, Innovation understood that it could not prevail on infringement and stipulated to non-infringement. Not once, but twice. As to the '398 patent, Innovation had a good faith belief that this Court's format requirement applied to whether the incoming and outgoing signals were in the compressed H.264 format, and directed its post-claim constructions arguments to that point.

In *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353 (Fed. Cir. 2017), the court found that the district court judge that had taken over the case from a retiring judge had failed to adhere to an earlier mandate requiring a new, independent review of the facts. *Id.* at 1359. Moreover, the plaintiff there failed to present evidence that the accused device functioned as required by the

claim as construed. *id.* at 1360-61, and that the plaintiff had attempted to remedy that problem with supplemental declarations filed years after the initial fees determination. *Id.* at 1361.

### D.  Innovation's Litigation Goals And Conduct Were Both Reasonable

The question of exceptionality is to be determined in light of the totality of the circumstances. *Octane Fitness*, 572 U.S. at 1756. Here, Amazon stretches to present an argument that Innovation should not have sued Amazon because Innovation's patents were not valid under Section 101 and that Amazon's products and services do not infringe. But each of those arguments is based on hindsight, after this Court ruled. If that were the correct standard, every unsuccessful patent assertion would be deemed exceptional. And yet, that is not the law. *See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (the "correctness or eventual success" of a party's litigation position is not determinative of the attorney fee issue).

As demonstrated above, Innovation had a reasonable expectation of success at every turn. The patents-in-suit, particularly the '492 family, have been tested extensively in litigation and at the USPTO. The patents-in-suit were issued *after Bilski* (which raised the Section 101 bar), many after *Alice*, and not one of Innovation's bear much in common with the patents invalidated in those two proceedings. The same is true of the '140 reissue patents with the USPTO having specifically raised the Section 101 during that reissue. Innovation's confidence in the validity of these patents was entirely reasonable.

Likewise, nothing about Innovation's claim interpretation supports finding this case exceptional. The claim language that lead to a finding of non-infringement of the '398 patent here had been previously construed in Innovation's favor, many claim construction decisions went Innovation's way, and Innovation's decision to limit its infringement analysis to comport with its understanding of this Court's construction as well as Innovation's decision to stipulate to

non-infringement of the '844 patent following claim construction, demonstrated Innovation's good faith. That Innovation ultimately lost as to infringement of the '398 patent does not change that result.

Even Amazon recognizes the correctness of each of these points or it would not have attempted to make more of Judge Moore's comments than warranted. Judge Moore was emphatic that Innovation evaluate its infringement case carefully should the Federal Circuit remand after reversing only one claim construction. But what happened at that hearing is a far cry from the suggestion that Innovation lacked any viable infringement theory from the outset. And yet, that is the conclusion Amazon asks this Court to draw.

Though it is Amazon that accuses Innovation of throwing spaghetti on the wall hoping that something will stick, it is Amazon that has employed that approach. Rather than focusing on any conduct it believes went beyond zealous advocacy, Amazon asserts that everything Innovation did was baseless and beyond the pale.  The facts, considered in the totality, directly contradict Amazon's assertions.

## III.    CONCLUSION

Section 285 of the Patent Act was not created to chill the right to petition the government for redress but to deter the abuse of the litigation process. And yet Amazon appears to have filed this fee demand not to deter baseless complaints but to deter anyone from filing a complaint naming Amazon as a defendant.  Amazon's efforts to use this case as a warning to others against is just plain wrong. Though Amazon prevailed here, Innovation's conduct was at all times reasonable, with Innovation having repeatedly demonstrated its good faith. For the foregoing reasons, Innovation respectfully requests that the Court deny Amazon's motion for attorneys' fees.

December 30, 2019                              *Respectfully submitted,*

                                              **VIRGINIA INNOVATION SCIENCES,
                                              INC. (NOW KNOWN AS INNOVATION
                                              SCIENCES, LLC)**

                                              */s/ Donald L. Jackson*
                                              Donald L. Jackson (VSB No. 42882)
                                              djackson@davidsonberquist.com
                                              James D. Berquist (VSB No. 42150)
                                              jberquist@davidsonberquist.com
                                              Walter D. Davis, Jr.  (VSB No. 48217)
                                              wdavis@davidsonberquist.com
                                              DAVIDSON BERQUIST JACKSON &
                                              GOWDEY LLP
                                              8300 Greensboro Drive, Suite 500
                                              McLean, VA 22102
                                              Telephone: (571) 765-7700
                                              Facsimile: (571) 765-7200

                                              *Counsel for Plaintiff Innovation Sciences, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to all counsel of record.

*/s/ Donald L. Jackson*
Donald L. Jackson
*Counsel for Plaintiff Innovation Sciences,*
*LLC*
