**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| VIRGINIA INNOVATION SCIENCES, INC., | ) | The Honorable Liam O'Grady |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-CV-00861(LO-MSN) |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY BRIEF OF DEFENDANT AMAZON.COM, INC. IN SUPPORT OF ITS
MOTION FOR REASONABLE ATTORNEY FEES UNDER 35 U.S.C. § 285**

*Of counsel:*

J. David Hadden*
dhadden@fenwick.com
Saina Shamilov*
sshamilov@fenwick.com
Todd Gregorian*
tgregorian@fenwick.com
Jeffrey Ware*
jware@fenwick.com
Ravi Ranganath*
rranganath@fenwick.com
Dargaye Churnet*
dargayec@fenwick.com
Jessica Kaempf*
jkaempf@fenwick.com
Sapna Mehta*
sapnam@fenwick.com
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:    (650) 988-8500
Facsimile:    (650) 938-5200

*Admitted Pro Hac Vice*

Robert A. Angle (VSB No. 37691)
  robert.angle@troutmansanders.com
Laura Anne Kuykendall (VSB No. 82318)
  la.kuykendall@troutmansanders.com
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, Virginia 23219
Telephone:    (804) 697-1246
Facsimile:    (804) 697-1339

Mary Catherine Zinsner (VSB No. 31397)
  mary.zinsner@troutmansanders.com
**TROUTMAN SANDERS LLP**
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone:    (703) 734-4363
Facsimile:    (703) 734-4340

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................1

II.    VIS BASED ITS '844 PATENT INFRINGEMENT POSITIONS ON
       UNREASONABLE CLAIM CONSTRUCTIONS ...........................................3

III.   VIS'S PURSUIT OF ITS '398 PATENT INFRINGEMENT CLAIMS AFTER CLAIM
       CONSTRUCTION ALSO MAKES THIS CASE EXCEPTIONAL..................5

IV.    VIS ASSERTED THE '140 PATENT AND '492 PATENT FAMILY EVEN THOUGH
       THOSE PATENTS WERE INVALID UNDER 35 U.S.C. § 101 .....................10

V.     VIS'S ADDITIONAL VEXATIOUS LAWSUITS AGAINST AMAZON SUPPORT A
       FINDING THAT THIS CASE IS EXCEPTIONAL.........................................16

VI.    CONCLUSION..............................................................................................19

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*AdjustaCam, LLC v. Newegg, Inc.*,
   861 F.3d 1353 (Fed. Cir. 2017).................................................................................7

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2015) ............................................................................... *passim*

*Athena Diagnostics, Inc. v. Mayo Collaborative Service, LLC*,
   927 F.3d 1333 (Fed. Cir. 2019) (en banc).........................................................14

*DDR Holdings, LLC v. Hotels.com*,
   773 F.3d 1245 (Fed. Cir. 2014)............................................................................12

*Dietgoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
   No. 2:12-cv-764, 2015 WL 1284826 (E.D. Tex. Mar. 20, 2015) ......................10

*Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assoc., LLC*,
   699 F. Supp. 2d 766 (E.D. Va. 2009) ..................................................................3

*Garfum.com Corp. v. Reflections by Ruth*,
   No. 14-5919, 2016 WL 7325467 (D.N.J. Dec. 16, 2016)..................................10

*Hamilton Beach Brands, Inc. v. Sunbeams Prods., Inc.*,
   No. 3:11-cv-345, 2012 WL 5473752 (E.D. Va. Nov. 9, 2012) .........................14

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
   No. 2:10-cv-90, MDL Dkt. No. 1:09-md-2050, 2012 U.S. Dist. LEXIS
   29020 (S.D. Ohio Mar. 6, 2012) .........................................................................4

*In re Protegrity Corp.*,
   No. 3:15-md-02600-JD, 2017 U.S. Dist. LEXIS 27300 (N.D. Cal. Feb. 27,
   2017) ...................................................................................................................11

*Intex Recreation Corp. v. Team Worldwide Corp.*,
   77 F. Supp. 3d 212 (D.D.C. 2015) .......................................................................7

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017)..........................................................................10

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005)..........................................................................14

*Kinglite Holdings, Inc. v. Micro-Star Int'l Co.*,
   No. CV 14-03009 JVS, 2016 U.S. Dist. LEXIS 113284 (C.D. Cal. June
   23, 2016) ...............................................................................................................4

**TABLE OF AUTHORITIES**
**(CONTINUED)**

CASES                                                                    PAGE(S)

*Laitram Corp. v. Rexnord, Inc.*,
   939 F.2d 1533 (Fed. Cir. 1991)..............................................................................4

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
   566 U.S. 66 (2012)...............................................................................................14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014).................................................................................1, 15, 19

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.,
   Inc.*,
   858 F.3d 1383 (Fed. Cir. 2017).............................................................................19

*Shipping & Transit, LLC v. Hall Enters.*,
   No. 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122 (C.D. Cal. July
   5, 2017) ................................................................................................................10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   745 F.3d 513 (Fed. Cir. 2014)..............................................................................14

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
   928 F. Supp. 2d 863 (E.D. Va. 2013) ...................................................................16

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
   614 Fed. App'x 503 (Fed. Cir. 2015)......................................................................8

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
   976 F. Supp. 2d 794 (E.D. Va. 2013) .....................................................................9

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
   983 F. Supp. 2d 713 (E.D. Va. 2014), *vacated on other grounds* ............................8, 9, 16

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
   No. 2:13cv332, 2014 WL 1685932 (E.D. Va. Apr. 11, 2014), *vacated on
   other grounds*.........................................................................................................8

*Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv
   Found.*,
   245 F. Supp. 3d 742 (E.D. Va. 2017) ...................................................................15

STATUTES

35 U.S.C. § 101...........................................................................................10, 13, 14

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**OTHER AUTHORITIES**                                                        **PAGE(S)**

F.R.C.P. Rule 54 ...............................................................................................................14, 15

## I.      INTRODUCTION

VIS argues that the Court should not award fees because its litigation was not "frivolous" and its allegations were not "objectively baseless." That is not the legal standard for awarding fees in a patent case; instead, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

Moreover, VIS's claims *were* baseless. VIS accused *more than a dozen* different Amazon products and services of infringing *11 patents* across its "diverse patent portfolio," and lost on every claim. The Court invalidated nine of VIS's patents – eight on a motion to dismiss – because they failed to describe a means for accomplishing the bare aspirations they claimed. The Court held the remaining patents not infringed or invalid at summary judgment after rejecting VIS's proposed claim constructions as contrary to the "overwhelming thrust" of the patents and criticizing VIS's "aggressive litigation position." While VIS concocted some claims—out of the scores it brought originally—that the Court did not dismiss on the pleadings, that does not make VIS's litigation behavior reasonable. As described in opening, VIS simply threw a bunch of spaghetti against the wall, and nothing stuck.

In its opposition, VIS also pretends to be something it's not. VIS is not and never was an "innovator." Its sole owner and employee, Tiehong Wang (a.k.a. "Ann Wang" and "Anne Wong") operates the company ███████████, and VIS's only business is ███████████████████ ████████████████████████. Far from innovating in "signal conversion" or "smart home technology," Ms. Wang previously testified █████████████████████████ ██████████████████████████████████████████████████. She changed

her story for her deposition in this case, ███████████████████████████████████████

████████████████. VIS also exaggerates the outcome of its past cases.  It brags about its

previous "successful" assertion of the '398 patent against Samsung.  But the court granted sum-

mary judgment in favor of Samsung, finding all asserted '398 patent claims invalid or non-in-

fringed, and VIS cancelled several '398 patent claims after the Patent Office instituted *inter partes*

review.

VIS also advanced unreasonable positions throughout the litigation.  VIS did not act in

"good faith" when it asserted several patents that were facially invalid after *Alice Corp. Pty. Ltd.

v. CLS Bank International*, 573 U.S. 208 (2014); advanced constructions for the '844 patent that

read limitations out of the claims and contradicted the basic purpose of the invention; disregarded

the Court's claim constructions for the '398 patent to maintain its infringement case against Ama-

zon Fire TV products; and continued to litigate the '140 patent after the Court's orders made it

clear that the patent claimed ineligible subject matter.

VIS further mischaracterizes the lawsuits it has filed against Amazon since this litigation.

VIS argues that these cases are different because the asserted patents focus on "smart home tech-

nology."  In fact, the patents in the new cases are continuations or continuation-in-parts of the

patents asserted in this case, and VIS asserts them against several of the same Amazon products.

Moreover, VIS cannot credibly argue that it removed "Virginia" from its name and moved to

Texas—*after* Amazon moved to transfer VIS's new Texas case back to this Court—solely for pur-

pose of "favorable tax treatments in that state."  VIS brazenly offers this "tax" pretext without any

contemporaneous supporting evidence, only Ms. Wang's say-so after the fact. A fee award here

will properly incentivize VIS to focus on meritorious patent disputes rather than its ability to abuse

the federal court system and impose burden and expense on its opponents.

Finally, VIS did not challenge the reasonableness of Amazon's attorney rates and hours spent defending against VIS's claims. As a result, the Court should award Amazon its full fees. *See Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assoc., LLC*, 699 F. Supp. 2d 766, 768, 772 (E.D. Va. 2009) (accepting attorney rates and hours billed as reasonable where movant submitted supporting declarations and respondent did not challenge them).

## II.      VIS BASED ITS '844 PATENT INFRINGEMENT POSITIONS ON UNREASONABLE CLAIM CONSTRUCTIONS

As explained in Amazon's opening brief, the '844 patent requires a signal from the accused product to be an "item status signal" (*i.e.*, a signal conveying the status of the merchandise associated with the button) that "provide[s] information regarding an updated condition of a merchandise." (Mot. at 9.) Under the clear language of the claims, VIS had no plausible basis to assert that the Dash Button signal, consisting of a unique identifier of the Dash Button itself, conveyed the status of associated merchandise or an updated condition of that merchandise.

According to VIS, its infringement positions were reasonable because an "updated condition is simply a condition of a merchandise at a more recent time, *regardless of whether that condition has changed*." (Opp. at 23 (emphasis added).) But the Federal Circuit rejected VIS's position as unreasonable and contrary to common sense. It noted the '844 patent's "specification only describes sending an item status signal when the condition has changed" and "[a]s a *matter of common sense*, it is unclear why an item status signal indicating no change in the condition of a merchandise would then prompt a purchase request for the merchandise." (Dkt. No. 235 at 17-18 (emphasis added).) And this Court held that VIS's proposed construction "runs contrary to the overwhelming thrust of the patent." (Dkt. No. 139 at 31.) Advancing this unreasonable claim construction to prolong its infringement case against Dash Button should weigh in *favor* of an exceptional case determination, not against it.

Patent claims—in valid patents, at least—mark the boundaries of what the patentee invented and owns.  One good indication of a baseless claim—an attempt to claim ownership of something a patentee did not invent—is when a plaintiff argues that the words in the claims of its own patent do not mean what they say.  VIS took just such a position in this case, arguing that the claimed "item status signal" need not convey information about the status of an item.  (Dkt. No. 235 at 17.)  The Court rejected VIS's proposed construction as "aggressive" and "inappropriately broad" (Dkt. No. 139 at 30), and the Federal Circuit held that VIS's position had "no merit."  (Dkt. No. 235 at 17.)

VIS's assertion that this Court adopted one of its five proposed constructions for the '844 patent's claim terms is beside the point.  (Opp. at 23.)  To prove infringement, VIS had to show that the Dash Button met *each and every claim* limitation of at least one claim.  *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of [a] claim.").  VIS lacked grounds to plausibly assert that the Dash Button satisfied the "item status signal" or "an updated condition of a merchandise" claim limitations, meaning it did not have a viable infringement claim.  As another court found when awarding attorney fees under Section 285, "[t]his is not horseshoes": a plaintiff's good faith belief that the accused instrumentalities covered *most* but not *all* of the claimed limitations "is not good enough."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, No. 2:10-cv-90, MDL Dkt. No. 1:09-md-2050, 2012 U.S. Dist. LEXIS 29020, at *31 n.4 (S.D. Ohio Mar. 6, 2012); *see also Kinglite Holdings, Inc. v. Micro-Star Int'l Co.*, No. CV 14-03009 JVS (PJWx), 2016 U.S. Dist. LEXIS 113284, at *29-30 (C.D. Cal. June 23, 2016) (finding case exceptional because plaintiff brought lawsuit where defendants' products clearly "lacked at least one necessary component" of the claimed systems).

Finally, VIS asserts that Amazon "distorted the record" of the oral arguments before the Federal Circuit "to manufacture a basis to suggest that Innovation never had a legitimate theory of infringement." (Opp. at 2.)  But the record speaks for itself.  Judge Moore stated at oral argument that VIS "articulated nothing at all that amounts to a legitimate theory of infringement," and Judge Chen observed that "all the pressing of the [Dash] Button conveys is the desire for more of the product . . . so I guess I'm at a loss why it detects any 'change in a condition.'"  (Appeal Oral Argument Recording at 33:52-37:32, 38:20-38:54 (http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-1495.mp341T).)  VIS's infringement theory suffered from these fundamental defects when it filed its complaint in July 2016, and VIS did not agree to permanently withdraw its baseless infringement claims for the '844 patent until more than three years later in November 2019.  (Dkt. Nos. 1, 248.)  VIS's unreasonable infringement theory, resting on its unsupportable constructions of "item status signal" and "updated condition of a merchandise," meant that VIS lacked a plausible basis for asserting the '844 patent against Amazon.

## III.  VIS'S PURSUIT OF ITS '398 PATENT INFRINGEMENT CLAIMS AFTER CLAIM CONSTRUCTION ALSO MAKES THIS CASE EXCEPTIONAL

VIS offers no valid justification for its continued prosecution of the '398 patent claims based on theories that contravened the Court's claim construction order.  Specifically, the Court held that "[i]f the free will of the cell phone's user can dictate the destiny of the multimedia content item, then it is no longer within the scope of the claims." (Dkt. 139 at 14.) VIS had notice not just from the Court's claim construction order, but also the Rule 11 letter Amazon sent to VIS after that order, and still pressed forward with an infringement theory that relied on the free will of the cell phone's user.  VIS's opposition attempts to obscure the clear notice it received from the Rule 11 letter by quoting from it selectively to omit its references to the Court's ruling.  VIS discussed the letter as follows:

As to the '398 patent, Amazon asserted that under this Court's claim construction:

> ... "the destination device must be established as the destination before the media content is received" at the user's cell phone. *Id.* at 33. VIS has disclosed no theory that is viable after the Court's construction.

(Opp. at 3-4 (no alterations made) (quoting Amazon's Rule 11 letter).)  Here is the entire quote as it appeared in the letter:

> ***'398 patent.  VIS's infringement theory for the '398 patent requires a user to choose to send content from his or her cell phone to a destination device. The Court directly rejected this theory, explaining: "[i]f the free will of the cell phone's user can dictate the destiny of the multimedia content item, then it is no longer within the scope of the claims." Order at 14. Rather,*** "the destination device must be established as the destination before the media content is received" at the user's cell phone. *Id.* VIS has disclosed no theory that is viable after the Court's construction.

(Dkt. 254-9 at 1 (emphasis added to omitted portion).)

In its motion for summary judgment, VIS argued that "[m]uch like an orchestra is directed by a conductor, here the multimedia content is 'directed' to the TV by the user device."  (Dkt. No. 158 at 10).  The Court recognized at summary judgment that this description flouted its earlier ruling, as it "suggests that it is the user, not an external source, which directs the destiny of the multimedia content item."  (Dkt. No. 203 at 5.)  VIS's new counsel asserts that VIS "conducted its infringement strategy for the '398 patent in good faith, strictly following the Court's constructions of disputed terms, and precisely identifying how and where Amazon's products infringe," but that contention is not supported by the record.  (Opp. at 22.)

Similarly, the Court construed "multimedia content item" to mean "the multimedia content in the format received by the wireless terminal device from the source." (Dkt. 139 at 22.)  Thus, under the Court's construction, the multimedia content item received by the wireless terminal

device (*i.e.*, a mobile phone) from the outside source must be in the same format as the multimedia content item received by the destination device (*i.e.*, the display).  (Dkt. No. 203 at 4.)  VIS inexplicably argued that the multimedia content item received from the outside source could be in a different format—and could be a different multimedia content item entirely—than that sent by the Fire TV to the display so long as both items were encoded using the H.264 compression algorithm. (Opp. at 21-22.)  VIS argues that it reasonably interpreted the term "format," which the Court did not construe, in advancing its infringement position.  (*Id.* at 21-22.)  But VIS's own expert made clear that "format" did not refer to compression algorithms.  (Dkt. No. 152-1, Ex. E at 154 ("█

███████████████████████████████████████████████████████████████████████████

████████████████████████████████").)  VIS identifies no portion of the Court's claim construction order or the specification that suggests the content item received from the outside source can be *a different multimedia content item* than what is transmitted to the display device.

VIS also remains obstinate in its mischaracterization of how the Miracast protocol works. (Opp. at 21.)  VIS asserts that the phone retains a copy of the received compressed signal in H.264 or AAC/AACL format and sends a copy over Miracast.  (*Id.*)  As the Court well knows, that assertion is incorrect.  Instead, the content transmitted by Miracast is created anew on the cell phone based solely on the display of the cell phone screen and in a format dictated by the cell phone. (Dkt. No. 151 at 17-18; Dkt. No. 152-2, Ex. H at ¶¶ 80-81.)  If VIS had conducted a reasonable pre-suit investigation, it would have discovered that the accused Miracast system—detailed in public standard specifications—generates an entirely new video on the user's cell phone and therefore could not possibly meet this claim requirement.  (*See* Dkt. No. 151 at 17-18; Dkt. No. 203 at 6-7.)  For it to perpetuate its mischaracterization of Miracast in opposing Amazon's fee requests reflects VIS's failure to litigate in good faith.

For both limitations "destined for a destination device" and "in the same format," the only way VIS could possibly allege infringement of the '398 patent was to disregard the Court's constructions.  This renders the case exceptional.  *See AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360 (Fed. Cir. 2017) (finding case exceptional because while plaintiff "may have filed a weak infringement lawsuit, . . . [its] suit became baseless after the district court's *Markman* order"); *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (awarding fees because the court's claim construction "foreclosed any reasonable argument" that the accused product infringed).

Unable to reconcile its infringement positions at summary judgment with the Court's constructions, VIS instead devotes considerable argument discussing to why it thinks its original claim construction positions for the '398 patent were reasonable. (*See* Opp. at 19-20.)  If VIS truly believed its rejected claim construction positions were reasonable, it could and should have stipulated to non-infringement and immediately appealed the constructions it believed to be erroneous.  Instead, it cross-moved for summary judgment (Dkt. 157), placing considerable additional burden on the Court and Amazon.

Moreover, VIS's arguments in favor of its claim construction positions lack merit.  VIS claims its constructions were reasonable because they were the same constructions that Judge Davis adopted when VIS "successfully asserted the '398 patent in prior litigation" against Samsung. (Opp. at 19.)  First, VIS did not "successfully" assert the '398 patent in either of its two actions against Samsung.  To the contrary, Judge Davis granted summary judgment of invalidity for the '398 patent claims asserted by VIS against Samsung in the first action.  *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 713, 745 (E.D. Va. 2014), *vacated on other grounds*, 614 F. App'x 503 (Fed. Cir. 2015).  And Judge Davis granted summary judgment of non-infringement

8

of the '398 patent for Samsung's products accused in the second action. *See Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, No. 2:13cv332, 2014 WL 1685932, at *5-9 (E.D. Va. Apr. 11, 2014), *vacated on other grounds*, 614 F. App'x 503 (Fed. Cir. 2015). VIS did not appeal these rulings on the '398 patent. *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 614 F. App'x 503, 505 n.1 (Fed. Cir. 2015). And the PTAB instituted IPRs on several '398 patent claims, prompting VIS to file requests for adverse judgment that cancelled these claims. *See* Reply Declaration of Saina S. Shailov in Support of Amazon's Renewed Motion for Reasonable Attorney Fees ("Shamilov Reply Decl."), Ex. 7 (*Samsung Elecs. Co. v. Va. Innovation Scis., Inc.*, IPR2013-00571 (Paper 24).) Samsung's agreement to a broader settlement covering multiple VIS patents, despite having achieved a total victory against VIS's '398 patent infringement claims, does not justify VIS's assertion of the '398 patent against Amazon in this case.

Second, VIS also incorrectly asserts that Judge Davis construed "the very terms Innovation had won on in the earlier *Samsung* litigation." (Opp. at 20.) The *Samsung* court construed the term "multimedia content item . . . destined for a destination device." *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 976 F. Supp. 2d 794, 823 (E.D. Va. 2013), *vacated on other grounds*, 614 F. App'x 503 (Fed. Cir. 2015). But as this Court explained in its claim construction order, the *Samsung* court construed "a slightly different term" from a different asserted claim than the disputed term here: "destined for a destination device located within the home location." (Dkt. No. 139 at 9, 13.) And VIS does not challenge the Court's analysis of the intrinsic record establishing that the patent requires "that the destination device is *determined before* the media content is received by the mobile terminal device." (Dkt. 139 at 11-12 (emphasis added).) Indeed, the Court rooted its construction in common sense: "It is impossible to recognize something that does not yet exist. Therefore, the term 'destined' must have some temporal significance in this context." (*Id.* at 12.)

Similarly, VIS ignores the Court's citation to the construction advanced by VIS itself in *inter partes* proceedings, where it proposed construing the term "multimedia content item" as "the multimedia content in the format received by the wireless terminal device from the source." (*Id.* at 21 (citing *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017).) VIS knew its claim construction position that there is no limitation on the term "multimedia content item" was incorrect. VIS itself had argued a contrary position before the Patent Office. (*Id.*) Thus, VIS's litigation conduct for the '398 patent, both in advancing unreasonable constructions and maintaining its infringement claims after they were effectively killed by the Court's claim construction order, renders this case exceptional.

## IV. VIS ASSERTED THE '140 PATENT AND '492 PATENT FAMILY EVEN THOUGH THOSE PATENTS WERE INVALID UNDER 35 U.S.C. § 101

VIS's assertion of nine ineligible patents also supports an exceptional case determination and fee award, and VIS's arguments in opposition confirm rather than undermine this conclusion. VIS argues that it did not even have to consider the eligibility of its patents under *Alice* before bringing suit, but instead could simply rely on a "presumption of validity." (Opp. at 10.) VIS's choice to rely on an *initial legal presumption* at the fee motion stage, rather than on the actual facts and circumstances of the case, is itself telling. Moreover, VIS's reliance is flawed: the Federal Circuit has never treated the presumption of validity as giving patentees a "free pass" to assert ineligible patents without risk of an adverse fee award. When analyzing whether a case is exceptional under Section 285, a court asks whether the patentee's position was foreclosed or weak under the governing law. *See, e.g.*, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379-80 (Fed. Cir. 2017); *Shipping & Transit, LLC v. Hall Enters.*, No. 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122, at *19 (C.D. Cal. July 5, 2017). A plaintiff has a responsibility to assess its case in view of controlling law and to re-assess when the law changes, and therefore

cannot simply rely on a "presumption" that its patent claims are eligible.  *Inventor Holdings*, 876 F.3d at 1379.

The examiner's allowance of some claims after *Alice* is not a get out of jail free card for VIS.  Nor do the cases VIS cites support that assertion.  (*See* Opp. at 14-15.)  In *Garfum.com Corp. v. Reflections by Ruth*, No. 14-5919, 2016 WL 7325467, *4 (D.N.J. Dec. 16, 2016), the Patent Office allowed claims after the patentee provided the examiner with the district court briefing on the § 101 motion to dismiss.  In *Dietgoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-764, 2015 WL 1284826, at *2 (E.D. Tex. Mar. 20, 2015), the district court specifically noted that the patentee, unlike VIS here, did not have the benefit of the Supreme Court's guidance in *Alice*.  Finally, in *In re Protegrity Corp.*, No. 3:15-md-02600-JD, 2017 U.S. Dist. LEXIS 27300, at *20 (N.D. Cal. Feb. 27, 2017), the district court merely held that the *Alice* decision alone provided insufficient guidance to resolve definitively the eligibility question in that case.  It did not suggest that the examiner's allowance of claims, without more, makes a patentee's litigating position reasonable or removes the possibility of a fee award for asserting a facially invalid patent.

VIS's choice to prosecute its '140 patent infringement claims is especially egregious.  VIS trumpets the fact that the Court denied Amazon's motion to dismiss for this patent.  (Opp. at 16.)  But it survived that motion only after identifying "switching" as the key concept that rendered the '140 patent inventive, thus persuading the Court to defer ruling. (*See* Dkt. 76 at 3, 8-9, 18, 20, 22-23.)  VIS's argument was not in good faith and only delayed the inevitable.  The '140 patent discloses no means of performing the switching, as VIS's witnesses including Ms. Wang made perfectly clear during their depositions. (Dkt. 255-6 (A. Wang Dep. Tr.) at 209:3-8; 210:3-13; Dkt. 203 at 12.)  Moreover, in its claim construction order, the Court noted "the lack of detail concerning the term 'switched'," and could not construe the term consistent with VIS's repeated

representations about switching during prosecution because to do so would "leave[] the meaning of the 'switching' even more unclear than before." (Dkt. 139 at 46.) VIS ignored these sign posts, and its continued pursuit of its '140 patent infringement claims through summary judgment supports finding this case exceptional.

VIS also mischaracterizes the '140 patented invention and what it argued in defense of patent eligibility. (Opp. at 16.) VIS now asserts that it "never argued that it had invented a new way of switching from one computer (the merchant's computer) to another (the payment computer)" and "[w]hile a 'switch' from one server to the other is involved, Innovation's invention was the network architecture – two separate communication channels." (*Id.*) False. In its opposition to Amazon's motion to dismiss, VIS described the invention as a "***novel switching procedure***" and argued that "[t]he ***solution*** set forth in the claims of the '140 patent includes a ***switch in communication channels*** having different security characteristics." (Dkt. No. 76 at 20 (emphasis added).) In its opposition to Amazon's summary judgment motion, VIS argued that "[t]he fact that the buyer is switched, distinguishes the claims from the prior art cited by the USPTO, namely U.S. Patent No. 5,822,737 ('Ogram')" and further identified switching as the '140 patent's "inventive concept." (Dkt. No. 169 at 17, 26.) VIS also proffered this same argument on appeal. (*See* Dkt. No. 235 at 6 ("[VIS] argues that by switching the online communication between the buyer and merchant to a secure communication channel for transmission of payment information, the invention implements a new technological solution.").) Through appeal, VIS argued the '140 patented invention was about "switching," even though it could never identify how it accomplished this switch.

The Federal Circuit's opinion *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014) fails to, as VIS contends, justify its unreasonable assertion of the '140 patent and '492 patent

family.  (Opp. at 12-14.)  *DDR Holdings* stressed "that not all claims purporting to address Internet-centric challenges are eligible for a patent."  773 F.3d at 1258.  And it held that the claimed system was patent-eligible only after finding that the patent "recite[d] *a specific way* to automate the creation of a composite web page by an 'outsource provider'" which included "'*additional features*' that ensured" the claims would not preempt the abstract idea of making two web pages look the same.  *Id.* at 1258-59 (emphasis added).  By contrast, as this Court and the Federal Circuit found, the claims of the '140 patent and '492 patent family lack any such details or features.  The Federal Circuit held in affirming this Court's invalidation of the '140 patent:

> The invention does not purport to improve the payment server or the server on which the item for purchase is listed. Instead, it simply claims the idea of switching to a more secure server for payment processing. ***Neither the claims nor the specification recite any specific way to carry out such a switch***. . . . The claim seeks to capture the broad concept of switching to a more secure server, rather than a specific way to do so.

(Dkt. No. 235 at 7-8 (emphasis added).)  Similarly, the Court held that the '492 patent family claimed unpatentable subject matter because the claims lacked an innovative concept, were purely functional in nature, and improperly threatened a "sweeping universe of preemption." (Dkt. 57 at 16, 32.)  The Federal Circuit affirmed this Court's ruling under Rule 36, meaning the panel unanimously determined that VIS raised no issues on appeal that merited a written opinion of any type.  *See* Federal Circuit Internal Operating Procedures Nos. 10.4 & 10.6.  VIS's position for the '492 patent family was unreasonable as well.

VIS cannot rely on the "evolving" state of Section 101 law to justify its position with respect to either the '140 patent or the '492 patent family.  (Opp. at 10-11.)  This is, in fact, an admission that its claims were baseless.  VIS did not concede ineligibility and argue for a change in law.  It argued that its patents were valid under Section 101 law as it exists under *Alice*, and made Amazon litigate that issue through summary judgment for the '140 patent.  VIS's argument

amounts to the suggestion that it is reasonable for a patentee to assert a facially invalid patent and simply hope the law will change in its favor, without presenting the district court with a coherent good-faith argument for it.   That cannot be the case.

VIS also argues that "the state of the law with respect to the question of 'usefulness' under Section 101 has been in a state of flux for at least the past decade or more," but this is a non-sequitur.   (Opp. at 10.)   The '140 patent and the '492 patent family suffer from a fundamental defect separate from "usefulness": they lack inventive concepts sufficient to transform abstract ideas into patentable inventions.[1]   This has been an essential requirement since *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012) and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).[2]

Finally, VIS argues that Amazon waived its right to seek its attorney fees for the '492 patent family.   (Opp. at 17.)   VIS is correct that a Rule 54(b) partial judgment starts the clock for a fee motion on the adjudicated claims.   Precedent also holds, however, that "a case should be viewed as an 'inclusive whole' rather than as a piecemeal process when analyzing fee-shifting under § 285," and the Court may "award[] fees for the entire case, including any subsequent appeals." *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 517 (Fed. Cir. 2014).   Here, the clerk also separately entered a Rule 58 judgment in favor of Amazon.   Amazon timely filed its initial fees motion after this final judgment.   (Dkt. Nos. 206, 214).   And under the Court's May 15, 2018

---

[1] VIS also cites *Athena Diagnostics, Inc. v. Mayo Collaborative Services, LLC*, 927 F.3d 1333 (Fed. Cir. 2019) (en banc) to support its assertion that "the Federal Circuit nearly begged the Supreme Court to take the issue up again to clarify its prior decisions regarding Section 101." (Opp. at 11.)   But the concurring opinions in *Athena* request Supreme Court clarification on patent eligibility for medical diagnostics patents, not computer-related patents.   927 F.3d at 1335-52.

[2] Even if a predecessor application to the application that issued as the '140 patent overcame a Section 101 rejection, that is irrelevant.   (Opp. at 15-16.)   The 2009 and 2010 Office actions not only predate *Mayo* and *Alice*, but were for a different patent.

order, Amazon timely filed the instant renewed motion, as well. (Dkt. Nos. 234, 249, 253.) Neither

case cited by VIS in support of its position (Opp. at 17), *IPXL Holdings, LLC v. Amazon.com, Inc.*,

430 F.3d 1377 (Fed. Cir. 2005) and *Hamilton Beach Brands, Inc. v. Sunbeams Products, Inc.*, No.

3:11-cv-345, 2012 WL 5473752 (E.D. Va. Nov. 9, 2012), addresses the situation here where mul-

tiple judgments issued over the course of "the entire case." *Therasense*, 745 F.3d at 517. However,

if the Court holds that the February 9, 2017 Rule 54(b) partial judgment as to the '492 patent family

precluded Amazon from seeking recovery of its related fees after the later Rule 58 judgment in

favor of Amazon on all claims, it should deduct fees incurred at the district court on the '492 patent

family in the amount of $██████. (Shamilov Reply Decl., ¶ 4.)

The Court should not find any appellate fees waived. This is because "Rule 54 can only

refer to a judgment entered by the district court and not a judgment or mandate of the court of

appeals" and "does not apply to a motion for fees on appeal brought in the district court." *Zoro-*

*astrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found.*, 245 F. Supp. 3d 742,

750-54 (E.D. Va. 2017). Thus, it would not prevent the Court from awarding Amazon's reasonable

attorney fees for the '492 patent family appeal. Because the Federal Circuit's mandate issued in

June 2018, after the Court's order granting Amazon leave to refile its fees motion "after the appeals

are resolved," there should be no dispute over compliance with Rule 54(d) for Amazon's attorney

fees connected to the first appeal.

Thus, VIS's litigation assertion of nine ineligible patents—and especially VIS's continued

assertion of the '140 patent in light of its acknowledged failure to explain how the patent's alleged

inventive concept "switching" was achieved—supports an exceptional case determination and fee

award.

## V.     VIS'S ADDITIONAL VEXATIOUS LAWSUITS AGAINST AMAZON SUPPORT A FINDING THAT THIS CASE IS EXCEPTIONAL

VIS's opposition tells a tall tale about the nature of its business, the scope of its patent portfolio, and its conduct in other litigations, underscoring the point that "considerations of compensation and deterrence" support a finding that this case is exceptional. *Octane Fitness*, 572 U.S. at 554 n.6.

VIS claims that its "work" in "signal conversion" and "video technology" predates Amazon's introduction of the accused Fire TV products. (Opp. at 6.)  The only "work" VIS has ever performed in this field is drafting patent applications and filing lawsuits.  Ms. Wang, a named inventor on the patents-in-suit, operated VIS █████████████████████████████████. *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 869-70 (E.D. Va. 2013); (Dkt. 255-6 (A. Wang Dep. Tr.) at 8:9-22, 32:20-35:18).)  In Ms. Wang's 2014 deposition in the *Samsung* case, she testified ████████████████████████████████████████████████████████████████████. (*Id.* at 23:11-32:19).  Although she testified differently at her deposition in this case, ████████████████████████████████████████████████. (*Id.*)

VIS's assertion that it holds a "diverse patent portfolio" is also deceptive. (Opp. at 7.)  VIS's patents claim four core ideas.  The first idea, which through a series of continuation and reissue applications led to the '140 patent, relates to securely processing credit card payments for online purchases by switching the user from a merchant server to a payment server.  As this Court recognized, this idea lacks "any new improved technology for achieving the result" and merely covers "a series of conventional steps performed in any online transaction."  (Dkt. No. 203 at 10-11).  The second idea is a "conversion module" ("MTSCM") that converts signals over wireless networks for use or display on devices.  This idea is claimed in the '492 patent family (which the

Court held to be unpatentable) and the '398 patent (which the Court held the Fire TV did not practice). The third idea involves a diaper monitoring controller ("DCSM") that receives a signal from a transmitter in a baby's diaper. And the fourth idea involves providing secure payment using wireless communications to a local "wireless HUB," which then communicates with a remote server. The "diversity" of VIS's patent portfolio lies in filing continuation applications that recombine these ideas in an attempt to get them to read on products already in the market. For example, Ms. Wang merged the third and fourth ideas above for the '844 patent to read on the Dash Button, although as the Court noted, "there is no description of this combined device in the specifications, [and] it is nearly impossible to tell how it would work." (Dkt. No. 139 at 28.)

VIS should have learned its lesson from its defeat in this case. Instead, it merely changed venue hoping for more success elsewhere. VIS filed a new lawsuit against Amazon in Texas asserting four patents that cover the same core ideas described above and, in fact, are continuation or continuation-in-part patents from patents asserted here. (Dkt. No. 254-8.) U.S. Patent Nos. 9,942,798, 9,912,983, and 9,729,918, asserted in Texas, share the same specifications and claim priority to the same patent applications that issued as the '492 patent family and the '398 patent. (Dkt. No. 257-1, ¶¶ 29-30.) The fourth patent asserted in that lawsuit, U.S. Patent No. 9,723,443 is a continuation of the '844 patent, and shares the same title, inventors, and specification. (*Id.*) These new patents cover the same non-inventive concepts.

VIS also mischaracterizes the Texas lawsuit as different from this action because Amazon's smart home product "developments trailed Innovation's work in that area." (Opp. at 7.) As discussed, VIS has never done any "work" in any area other than filing patent applications and lawsuits, much less developing smart home technology. In Texas, VIS asserts new continuation patents that combine the same signal converter ("MTSCM") and diaper monitor ("DCSM") that the

Court analyzed in this case in an attempt to capture Amazon products.  The accused devices in Texas include the Fire TV, Fire Tablets, and Dash Button, all of which VIS accused here, and all of which were on the market years before these new patents were filed in 2017.  If VIS was, in fact, an innovator developing actual products and technologies, it would not have removed "Virginia" from its name and moved to Texas to avoid this Court and bring another lawsuit against Amazon.  (*See* Mot. at 16-17.)

Calling out VIS's unethical forum shopping is also not, as VIS argues, a "collateral attack" on Judge Mazzant or otherwise "improper."  (Opp. at 26.)  The facts speak for themselves: (i) VIS filed and then dismissed a second lawsuit against Amazon in this district asserting two of the same patents and accusing several of the same products as in this case (Mot. at 16; Opp. at 25); (ii) VIS sued Amazon and three other companies in the Eastern District of Texas in July 2018 when VIS was still located in Virginia. (Dkt. No. 254-8); (iii) Amazon moved to transfer the Texas case to this Court in October 2018 (Shamilov Reply Decl, ¶ 3); (iv) VIS requested and received *five* extensions of its deadline to oppose, representing this was necessary because it needed to retain new counsel (*Id.*); (v) During that time, without telling Amazon, Ms. Wang formed "Innovation Sciences, LLC," a Texas limited liability company, and merged Virginia Innovation Sciences, Inc. into it (Dkt. No. 254-13); (vi) VIS moved to substitute parties because it "merged into Innovation and no longer exists" (Dkt. 254-10 at 1-2); (vii) In December 2018, VIS finally responded to Amazon's motion to transfer, arguing that transfer was improper based on its relocation to Texas, which it claimed occurred solely because of Texas' "favorable tax environment." (Dkt. 254-11 at 3).  Presented with these facts, Judge Mazzant ruled that Amazon had not established that Virginia was a clearly more convenient forum under Section 1404.  This Court is entitled to arrive at its

18

own conclusions about VIS's conduct in deciding the wholly different issue of whether to award fees.

Finally, VIS does not dispute that it does not pay its own litigation costs, refused to pay certain of its former counsel and experts from past litigation, and generally relies on contingency fee counsel to prosecute its baseless claims.  (*See* Mot. at 17.)  Thus, along with compensating Amazon from VIS's exceptionally weak patent infringement claims, an award imposing real costs on VIS and its successor Innovation Sciences is necessary to deter more of this misconduct, which will otherwise continue unabated.  *See Octane Fitness, Inc.*, 572 U.S. at 554 n.6; *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1389-90 (Fed. Cir. 2017) (vacating holding that case was not exceptional because district court failed to consider plaintiff's other vexatious lawsuits).

## VI.    CONCLUSION

For these reasons, Amazon respectfully requests that the Court award Amazon all of its incurred fees, or at a minimum the fees it incurred after the Court issued the claim construction order.

January 13, 2020

*Of counsel:*

J. David Hadden*
dhadden@fenwick.com
Saina Shamilov*
sshamilov@fenwick.com
Todd Gregorian*
tgregorian@fenwick.com
Jeffrey Ware*
jware@fenwick.com
Ravi Ranganath*
rranganath@fenwick.com
Dargaye Churnet*
dargayec@fenwick.com
Jessica Kaempf*
jkaempf@fenwick.com
Sapna Mehta*
sapnam@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

**Admitted Pro Hac Vice*

Respectfully submitted,

**AMAZON.COM, INC.**


*/s/ Laura Anne Kuykendall*


Robert A. Angle (VSB No. 37691)
    robert.angle@troutmansanders.com
Laura Anne Kuykendall (VSB No. 82318)
    la.kuykendall@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia   23219
Telephone: (804) 697-1246
Facsimile: (804) 697-1339

Mary Catherine Zinsner (VSB No. 31397)
    mary.zinsner@troutmansanders.com
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone: (703) 734-4363
Facsimile: (703) 734-4340