IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| INNOVATION SCIENCES, LLC, f/k/a, VIRGINIA INNOVATION SCIENCES, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> AMAZON.COM, INC., <br><br> *Defendant.* | Civil No. 1:16-cv-00861 <br><br> Hon. Liam O'Grady |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendant's Motion for Attorneys' Fees Under 35 U.S.C. § 285. Dkt. 253. The motion has been fully briefed and the Court dispensed with oral argument because it would not aid in the decisional process.

### I. BACKGROUND

Plaintiff Innovation Sciences, LLC ("Innovation") initiated this action against Defendant Amazon.com ("Amazon") on July 5, 2016.[1] The original complaint asserted three groups of patents, encompassing a total of ten patents. The first group consists of eight patents from the '492 patent family.[2] The second and third groups consist of one patent each: the '844 patent[3] and the '398 patent.[4]

---

[1] At that time, Innovation was known as Virginia Innovation Sciences, Inc. In 2018, Virginia Innovation Sciences, Inc. merged into a new Texas corporation, Innovation Sciences, LLC.
[2] These are U.S. Patent Nos. 7,899,492; 8,050,711; 8,903,451; 8,948,814; 9,118,794; 8,712,471; 9,286,853; and 9,355,611 (collectively the "'492 patent family").
[3] U.S. Patent No. 9,368,844.
[4] U.S. Patent No. 8,135,398.

1

On January 5, 2017, this Court granted Amazon's motion to dismiss, finding all eight patents in the '492 patent family to be directed to an abstract idea, and thus nonpatentable subject matter. Partial summary judgment issued, and the Federal Circuit affirmed.

On January 11, 2017, Innovation filed an amended complaint asserting an additional patent, the '140 patent.[5] The '140 patent claim survived a motion to dismiss, and the '140 patent, '398 patent, and '844 patent proceeded to claim construction.

This court held a claim construction hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), and issued a claim construction order on August 18, 2017. After claim construction, this Court granted Amazon's motion for summary judgment, holding that Amazon was not infringing the '398 patent and that the '140 patent was invalid under 35 U.S.C. § 101. Innovation stipulated to noninfringement of the '844 patent but reserved its right to appeal the construction issue. Thus, all the claims were disposed of.

Innovation appealed. The Federal Circuit affirmed as to the '398 and '140 patents, and affirmed in part, vacated in part, and remanded the stipulated judgment of noninfringement as to the '844 patent. All but one of the constructions were affirmed. The Federal Circuit was "left with no choice but to remand" despite Innovation's failure to articulate an "infringement position" under the affirmed constructions. Dkt. 235 at 19. The Circuit Court specifically vacated the judgment of noninfringement as to the '844 patent "because the stipulation does not specify whether [] affirmance of all but one of the appealed constructions is dispositive." Dkt. 235 at 22. Thereafter, Innovation jointly stipulated to dismissal.

This Court previously declined to consider Amazon's fees motion, Dkt. 214, until appeals were exhausted. *See* Dkt. 234. Innovation's deadline to file a petition for writ of certiorari in the

---

[5] U.S. Reissue Patent No. RE46,140.

2

Supreme Court, February 1, 2020, passed and no writ has been filed. Amazon now renews its motion for reasonable attorney fees pursuant to 35 U.S.C. § 285.

## II. Legal Standard

Courts are authorized "in exceptional cases" to award "reasonable attorney fees to the prevailing party" in a patent action.[6] 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "There is no precise rule or formula" regarding exceptionality, and instead, "[d]istrict courts [] determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Factors that a district court may consider include frivolousness, a party's motivation, the objective unreasonableness in both the factual and legal components of the case, and the need to deter. *Id.* at 554 n.6.

## III. Analysis

### A. This Is an Exceptional Case

Amazon has shown that this case is exceptional in light of the totality of the circumstances. Under *Octane*, an infringement lawsuit which was substantively weak when it was filed can become exceptional when claim construction renders the claims therein baseless. *See AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360 (Fed. Cir. 2017). Here, Innovation's claims were baseless after claim construction. Nonetheless, Innovation continued to litigate these exceptionally weak claims, and this case stands out from others as a result.

---

[6] Innovation does not dispute that Amazon is the prevailing party.

3

Innovation's lawsuit was substantively weak before claim construction. The majority of the asserted claims, the '492 patent family, were dismissed because the patents were invalid on their face. Those patents, found invalid under 35 U.S.C. § 101, were directed to patent-ineligible subject matter. They lacked any inventive concept and threatened a "sweeping universe of preemption." Dkt. 57 at 16. However, the fact that Amazon did not challenge the '398 or '844 patent, and the fact that Amazon's challenge to the '140 patent failed, shows that while the case was weak at inception Innovation's litigation position was not so extraordinarily weak as to be exceptional prior to construction. Following the *Markman* hearing, however, each claim was baseless.

While the '140 patent survived a motion to dismiss, it was clearly invalid after claim construction. The fact that the Court adopted Innovation's proposed construction does support either the validity or strength of the claim. The issue was the term "switched," which the Court was required to construe "[d]ue to the lack of detail." Dkt. 139 at 46. The Court explicitly stated that "neither" party offered a "satisfactory" argument as to how the term should be construed. Dkt. 139 at 46. Furthermore, the Court was required "to presume the validity of the patent" when adopting Innovation's proposed construction, because the construction was clearly "unsatisfactory." Dkt. 139 at 47.

While the Court accepted Innovation's construction of "switched," the *Markman* order notified Innovation that the '140 patent was legally insufficient either as patent ineligible subject matter or because it lacked a written description. Indeed, when the '140 patent was later found to be directed at nonpatentable subject matter, this Court noted that the term "switched" caused the patent to claim a result without claiming either "any new or improved technology for achieving the result" and without explaining "*how*" the result is accomplished. Dkt. 203 at 10-

11, 12 (emphasis in original). This was the clear and necessary consequence of the claim construction and because the Court's analysis revealed the '140 patent to be so weak, Innovation's continued litigation after the *Markman* order issued was unreasonable.

The '398 patent claim was also baseless after construction because Innovation proffered two meritless arguments in an attempt to relitigate this claim. First, in construing the '398 patent, "the Court conclude[d] that the 'destiny' of 'multimedia content items' is defined by external sources." Dkt. 139 at 14. Yet Innovation's subsequent litigation did not identify an external source. Indeed, as this Court noted in granting summary judgment, Innovation argued in direct contravention of the *Markman* order "that it is the user, not an external source, which directs the destiny of the multimedia content item." Dkt. 203 at 5. Second, the *Markman* order construed "multimedia content item" to be limited to the format in which the item was received by the wireless terminal device from the source. Dkt. 139 at 22. Despite this limitation, Innovation continued to rely upon an infringement theory in which the format differed from that of the source. Dkt. 203 at 6. In light of the Court's claim construction, these arguments were meritless. Accordingly, Innovation's positions stand out as both substantively weak and unreasonable.

Finally, pursuit of the '844 patent claim after construction was baseless as well. First, the *Markman* order cast significant doubt on the patent's validity under 35 U.S.C. § 112. The order noted that, on the one hand, the specification did not describe the automatic purchasing that was claimed, and on the other, the claims contemplated a single device where the specification recited two devices, and in either case, the claims failed to indicate how the device functioned. These issues were never addressed further because after the *Markman* order, Innovation stipulated to noninfringement, appealed the constructions, and then stipulated to dismissal.

Second, though the Federal Circuit found one of the four appealed constructions to be erroneous, Innovation was "repeatedly" unable to articulate an infringement theory. *See* Dkt. 235 at 19. Moreover, while "losing on three of four appealed claim constructions would typically be dispositive" in a case like this, Innovation's own stipulation was unclear as to which constructions it relied upon. Dkt. 235 at 18. It therefore left the Federal Circuit "with no choice but to remand" despite Innovation's inability to pronounce a valid theory of infringement. Dkt. 235 at 19. Thus, after the *Markman* order issued, Innovation avoided summary judgment by stipulating to noninfringement, proceeded to appeal without a viable theory of infringement, and then prolonged the case by insisting on remand—caused by Innovation's own lack of clarity and specificity in the stipulation—without an infringement theory.

The Court finds that Innovation's litigation positions were so substantively weak after the claim construction occurred that this case stands out from others.[7] First, Innovation should have known each of its claims had become baseless upon issuance of the *Markman* order. Second, continuing to litigate each claim was objectively unreasonable. Accordingly, this is an exceptional case, and it became exceptional upon issuance of the claim construction order.

## B. Reasonable Attorney Fees

Because this is an exceptional case, the Court is authorized by statute to award "reasonable attorney fees" to Amazon. 35 U.S.C. § 285. The determination of what constitutes a reasonable fees award under § 285 is committed to the discretion of the district court. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010)).

---

[7] Amazon points to Innovation's other litigation as a reason this case stand out from others. This Court will let other courts make their own assessment.

District courts employ the lodestar method to guide their discretion in calculating an award of attorneys' fees. *Id.* Under the lodestar method, a court multiplies the number of hours reasonably expended on the matter by a reasonable hourly rate. *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Bywaters v. United States*, 670 F.3d 1221, 1229-30 (Fed. Cir. 2012); *Robinson v. Equifax Info. Svcs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009).

The lodestar figure is presumptively reasonable, but district courts have discretion to adjust the lodestar figure upward or downward in some circumstances. *Bywaters*, 670 F.3d at 1229. The factors to be considered in analyzing reasonableness (the "*Johnson* factors") are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-44 (4th Cir. 2009); *see also SunTiger, Inc. v. Sci. Research Funding Grp.*, 9 F. Supp. 2d 601, 608 (E.D. Va. 1998), *aff'd*, 194 F.3d 1335 (Fed. Cir. 1999). Although each factor is persuasive, courts need not consider each individually because they are all "subsumed" into an analysis of what constitutes a reasonable rate and number of hours expended. *Smith v. Loudoun Cty. Pub. Sch.*, 2017 WL 176510 at *2 (E.D. Va. Jan. 17, 2017); *accord Burke v. Mattis*, 315 F. Supp. 3d 907, 911 (E.D. Va. 2018). Courts then subtract fees for hours spent on unrelated, unsuccessful claims and award some percentage of the remaining amount, depending on the degree of success. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 234 F. Supp. 3d 760, 766 (E.D. Va. 2017), *vacated in part on other grounds*, 881 F.3d 293 (4th Cir. 2018); *see also Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 444 (E.D. Va. 2007), *aff'd*, 281 F. App'x 995 (Fed. Cir. 2008).

## *1. Lodestar Calculation*

The Court arrives at the presumptively reasonable lodestar figure by multiplying reasonable rates by reasonable hours. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016).

### *(i) Reasonable Rates*

Reasonable hourly rates are the prevailing market rates in the relevant community, which is the forum. *Bywaters v. United States*, 670 F.3d 1221, 1232 (Fed. Cir. 2012) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)); *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008)). The fee applicant bears the burden of establishing the reasonableness of a requested rate by submitting specific evidence. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

Amazon was represented in this action by Fenwick & West LLP ("Fenwick"), and Troutman Sanders LLP ("Troutman") served as local counsel. These firms implicate the ninth factor, because both Troutman and Fenwick are well known and highly regarded, and the attorneys staffed to this matter enjoy similar reputations and have received awards demonstrating significant ability. For this representation, Amazon requests the following rates:

| Name | Firm | Position | Years' Experience | Range of Rates Sought |
|---|---|---|---|---|
| Hadden | Fenwick | Partner | 25 | $774.11-929.60 |
| Shamilov | Fenwick | Partner | 18 | $667.48-788.50 |
| Gregorian | Fenwick | Associate | 15 | $609.79-659.83 |
| Ranganath | Fenwick | Associate | 9 | $488.83-659.84 |
| Ware | Fenwick | Associate | 9 | $566.50-655.70 |
| Churnet | Fenwick | Associate | 7 | $488.79-556.39 |
| Kempf | Fenwick | Associate | 6 | $339.50-520.87 |
| Mehta | Fenwick | Associate | 6 | $339.77-501.06 |
| Mah | Fenwick | Associate | 6 | $479.00 |
| Acharya | Fenwick | Associate | 5 | $429.16-560.24 |
| Winnant | Fenwick | Paralegal | 28 | $248.85-348.60 |
| Howland | Fenwick | Paralegal | 25 | $258.39 |
| Gallwas | Fenwick | Paralegal | 15 | $239.76-308.67 |
| Zinsner | Troutman | Partner | 28 | $665-740 |
| Angle | Troutman | Partner | 24 | $705-810 |
| Kukendall | Troutman | Associate | 4 | $305-455 |
| Powers | Troutman | Paralegal | 17 | $220-225 |
| Stone | Troutman | Paralegal | 16 | $200-230 |

In support of these fees, Amazon has submitted three attorney declarations attesting to the reasonableness of the rates sought in the Northern Virginia market considering factors such as the skill and expertise of the attorneys and firms and the complexity of the case. The Court has performed its own evaluation and for the reasons stated below, finds these rates unreasonable.[8]

Although the ninth *Johnson* factor is implicated, the second, third, fourth, seventh, and twelfth factors also apply, and in light of the totality of the circumstances the requested rates are unreasonably high. First, although this was not a simple case, it was not particularly complex

---

[8] Innovation did not argue against Amazon's proposed rates.

9

and –as Amazon has successfully argued—the questions in this case were not novel. Indeed, eight of the eleven patents involved were facially invalid and dismissed early in the case. And while the case was litigated at both the district and Circuit court levels, Amazon has persuasively argued that the litigation after claim construction was baseless, and the *Markman* order as well as the appellate decision strongly suggest the issues were clear cut. While patent cases such as this require particularized expertise and skill, Amazon's attorneys do not appear to have incurred any opportunity costs, and time limitations were a nonissue in this case.

The most persuasive factor regarding the unreasonableness here is the final factor, attorneys' fees awards in similar cases. Amazon primarily argues that the rates sought are reasonable because they fall within the ranges identified in the *Vienna Metro* Matrix. *See Vienna Metro LLC v. Pulte Home Corp.*, No. 10-cv-502 (E.D. Va. Aug. 24, 2011)). At most, however, the Matrix ranges merely provide guidance as to Northern Virginia rates. Even a rate that is "appropriate under the [] *Vienna Metro* Matrix," may be reduced based on application of the *Johnson* factors. *Burke*, 315 F. Supp. 3d at 913. And while Amazon requests rates of up to $929.60, fee awards in similar cases within this district are not so high.[9] Indeed, a recent opinion

---

[9] *See, e.g., Taylor v. Republic Servs., Inc.*, No. 1:12-cv-523, 2014 WL 325169 at *4-5 (E.D. Va. Jan. 29, 2014) (Lee, J.) ($550-600, attorney with 29 years of experience; $545, 11 years; $475, 14 years; $425, 9 years; $400, 17 years; $375-400, 6 years; $325, 3 years; $135-250 for paralegals); *Hair Club for Men, LLC v. Ehson*, No. 1:16-cv-236, 2017 WL 1250998 (E.D. Va. April 3, 2017) (O'Grady, J.) ($547.50, 22 years of experience; $540, 26 years; $435, 9 years; $262.50, 2 years; $288.75, 3 years; $157.50-$266.25 for paralegals) (note 5 in *Hair Club for Men* indicates rates with a 25% reduction for lack of complexity; the table in the body of the opinion indicates a rate that is further reduced based on a 15% flat reduction of the total. The rates identified earlier here are the rates used before the flat reduction); *United States ex rel. Cody v. ManTech Int'l Corp.*, No. 116-cv-132, 2017 WL 5146019, at *3 (E.D. Va. Aug. 30, 2017) (Trenga, J.) ("$490 for partners and of counsel, $270 for associates,"); *Burke*, 315 F. Supp. 3d at 914 (O'Grady, J.) ($450, more than 20 years of experience; $375-385, 6 years, lead counsel; $370, 6 years) (the $450 rate in *Burke v. Mattis* is the result of a reduction of the proposed rate of $563*); S. Bos. Energy LLC v. Hartford Steam Boiler Specialty Ins. Co.*, No. 1:18-CV-596, 2019 WL 3843062, at *5 (E.D. Va. Aug. 15, 2019) (O'Grady, J.) (approving a rate

noted that "this Court does not recall ever awarding a lodestar rate of $563," which is significantly lower than the requested rates here. *Burke*, 315 F. Supp. 3d at 914. Thus, recent lodestar rate awards are persuasive as to the prevailing market rates.

Therefore, having considered the totality of the circumstances in light of the implicated *Johnson* factors, as well as the prevailing market conditions of this forum, the Court finds the following rates to be reasonable:

| Name | Firm | Position | Years' Experience | Range of Rates Sought | Reasonable Rate |
|---|---|---|---|---|---|
| Hadden | Fenwick | Partner | 25 | $774.11-929.60 | $540.00 |
| Shamilov | Fenwick | Partner | 18 | $667.48-788.50 | $510.00 |
| Gregorian | Fenwick | Associate | 15 | $609.79-659.83 | $485.00 |
| Ranganath | Fenwick | Associate | 9 | $488.83-659.84 | $435.00 |
| Ware | Fenwick | Associate | 9 | $566.50-655.70 | $435.00 |
| Churnet | Fenwick | Associate | 7 | $488.79-556.39 | $380.00 |
| Kempf | Fenwick | Associate | 6 | $339.50-520.87 | $375.00 |
| Mehta | Fenwick | Associate | 6 | $339.77-501.06 | $375.00 |
| Mah | Fenwick | Associate | 6 | $479.00 | $375.00 |
| Acharya | Fenwick | Associate | 5 | $429.16-560.24 | $330.00 |
| Winnant | Fenwick | Paralegal | 28 | $248.85-348.60 | $250.00 |
| Howland | Fenwick | Paralegal | 25 | $258.39 | $250.00 |
| Gallwas | Fenwick | Paralegal | 15 | $239.76-308.67 | $180.00 |
| Zinsner | Troutman | Partner | 28 | $665-740 | $540.00 |
| Angle | Troutman | Partner | 24 | $705-810 | $540.00 |
| Kukendall | Troutman | Associate | 4 | $305-455 | $290.00 |
| Powers | Troutman | Paralegal | 17 | $220-225 | $200.00 |
| Stone | Troutman | Paralegal | 16 | $200-230 | $200.00 |

---

of $507.63); *United Supreme Council v. United Supreme Council of Ancient Accepted Scottish Rite for 33 Degree of Freemasonry*, No. 1:16-CV-1103, 2019 WL 3848784, at *2 (E.D. Va. Aug. 15, 2019) (O'Grady, J.) (approving a rate of $260).

11

*(ii) Reasonable Hours*

Amazon seeks to recover fees for a total of 5,468.1 hours billed on the case (Fenwick total hours: 5,216.5; Troutman total hours: 251.6). The Court has reviewed the billing entries and finds them sufficiently detailed and appropriate. Importantly, Innovation has failed to dispute the reasonableness of these hours and has not identified any deficiencies in the bills or billing entries. In light of the case's four-year duration and appeals, which implicate the first and third *Johnson* factors, the hours spent here were reasonable.

Since the case was not exceptional before the *Markman* order of August 18, 2017, the Court declines to award Amazon fees for those hours. The table below reflects the hours expended by Amazon's team beginning on the date that the claim construction order issued.[10]

---

[10] The underlying data is available in the bills, or in the tables of Dkt. 255-4 at 15, 16 and Dkt. 255-7 at 8.

| Name | Firm | Hours Claimed |
|---|---|---|
| Hadden | Fenwick | 191.9 |
| Shamilov | Fenwick | 46.9 |
| Gregorian | Fenwick | 256.6 |
| Ranganath | Fenwick | 124.6 |
| Ware | Fenwick | 331.1 |
| Churnet | Fenwick | 131.3 |
| Kempf | Fenwick | 54 |
| Mehta | Fenwick | 23 |
| Mah | Fenwick | 90 |
| Acharya | Fenwick | 198.5 |
| Winnant | Fenwick | 151.9 |
| Howland | Fenwick | 20.1 |
| Gallwas | Fenwick | 47.7 |
| Zinsner | Troutman | 39.2 |
| Angle | Troutman | 6.7 |
| Kukendall | Troutman | 57.1 |
| Powers | Troutman | 0 |
| Stone | Troutman | 7.8 |

The Court finds these hours expended to be reasonable.

*2. Lodestar Amount*

Multiplying the reasonable hours spent by the reasonable rates, according to the table below, results in a final lodestar amount of $722,740.50.[11]

---

[11] Amazon requested post-claim construction fees of $884,663.53, calculated using the proposed rates.

13

| Name | Firm | Reasonable Hours | Reasonable Rate | Fees |
|---|---|---|---|---|
| Hadden | Fenwick | 191.9 | $540.00 | $103,626.00 |
| Shamilov | Fenwick | 46.9 | $510.00 | $23,919.00 |
| Gregorian | Fenwick | 256.6 | $485.00 | $124,451.00 |
| Ranganath | Fenwick | 124.6 | $435.00 | $54,201.00 |
| Ware | Fenwick | 331.1 | $435.00 | $144,028.50 |
| Churnet | Fenwick | 131.3 | $380.00 | $49,894.00 |
| Kempf | Fenwick | 54 | $375.00 | $20,250.00 |
| Mehta | Fenwick | 23 | $375.00 | $8,625.00 |
| Mah | Fenwick | 90 | $375.00 | $33,750.00 |
| Acharya | Fenwick | 198.5 | $330.00 | $65,505.00 |
| Winnant | Fenwick | 151.9 | $250.00 | $37,975.00 |
| Howland | Fenwick | 20.1 | $250.00 | $5,025.00 |
| Gallwas | Fenwick | 47.7 | $180.00 | $8,586.00 |
| Zinsner | Troutman | 39.2 | $540.00 | $21,168.00 |
| Angle | Troutman | 6.7 | $540.00 | $3,618.00 |
| Kukendall | Troutman | 57.1 | $290.00 | $16,559.00 |
| Powers | Troutman | 0 | $200.00 | $0.00 |
| Stone | Troutman | 7.8 | $200.00 | $1,560.00 |

Because this lodestar amount does not include hours billed before the claim construction order, the Court will not further reduce this figure and finds no reason to depart from this presumptively reasonable amount. Accordingly, the final lodestar amount that will be awarded in attorneys' fees is $722,740.50.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, Amazon's renewed motion for reasonable attorneys' fees, Dkt. 253, is hereby **GRANTED**. Amazon is entitled to attorneys' fees in the amount $722,740.50.

It is **SO ORDERED**.

February 18, 2020
Alexandria, Virginia

Liam O'Grady
United States District Judge